The Court

then observed that the declaration was certainly bad ; that the principle stated by the defendants’ counsel was correct. A moral obligation was not a sufficient ground on which the law wrnuld imply a promise, although it was a sufficient consideration to support an express promise (2) ; that in this case,"if the settlement of the paupers was in Andover, the obligation of Andover to reimburse Salem, when seasonably requested, was a legal obligation created by the statute of 1793, and was sufficient to raise a promise in law. But the declaration was insufficient, because it did not contain any averment that the settlement of the paupers was in Andover, nor that notice was given to that town within three months after Salem had begun to be at expense for their relief, for the reimbursement of which the action is brought. The declaration would be sufficient, if those averments had been made ; *for the [ * 439 ] defendants would thereby be charged with a legal obligation to reimburse the plaintiffs, whence a promise to reimburse would be implied by law. And there was another reason why these averments were necessary; for a recovery in this action by the plaintiffs was, by the 9th section of the statute before referred to, made a bar to the disputing of the settlement of the paupers in Andover by the defendants in any future action brought against them by the plaintiffs for the support or removal of these paupers.
The declaration was then amended by consent of the parties.
It is not necessary to mention the points made by the parties upon the question of settlement, nor the arguments of their counsel, as they will sufficiently appear from the opinion of the Court (the substance of which only is reported), as given by
Parsons, C. J.
It is admitted by the counsel on each side, that Elizabeth gained no settlement by her marriage with Stimpson, as *386 he never had any settlement within the state; and also that the settlement of her infant children must follow the settlement, of the mother. And it is very clear from the report that the mother has not gained any settlement in her own right; and that her settlement in Salem, the place of her birth, or elsewhere, still remains, without her having gained a settlement in Andover, unless her father had gained a new settlement there in his own right, and Elizabeth, as a child and part of his family, had acquired a derivative settlement in Andover through her father. This conclusion is not contested by the counsel on either side.
The question is then reduced to these points; whether Francis Nicholson, the father, ever gained a settlement in Andover; and if he did, whether Elizabeth was a member of her father’s family at that time, and thus gained a derivative settlement with him in Andover.
The counsel for the plaintiffs insist that Nicholson gained a settlement in Andover in 1779, when he purchased a freehold estate, and with his family lived on it, and has continued on it ever since; that the statute of 7 Geo. 3, c. 3, must have a reasonable construction, and ought not to be extended so far as to authorize any town to remove a man from his freehold.
[ * 440 ] * On the other side it has been argued that Nicholson’s case is within the express words of that statute; for it not only declares that residence in any town for any length of time shall not gain a settlement there, unless with the approbation of the inhabitants obtained in town meeting; but further, that no town shall be obliged to support any person residing there, unless such approbation has been obtained for his dwelling there.
The Court are strongly inclined to believe that the objection of the defendants is good ; that by force of this statute a man shall not be removed from his -freehold is a reasonable construction, but he may not gain a settlement by purchasing and living on his own freehold; for irremovability does not necessarily imply a settlement (3). So the statute of 1793, c. 34, enacts that any person, having a freehold estate of 10 dollars per annum in the place where he dwells, and taking the rents and profits thereof three years successively, shall gain a settlement; but a freehold estate of less annual value will not give a settlement, although the owner may not be removable from it against his consent. But we do not think it necessary now to decide this point.
The plaintiffs’ counsel has argued, that if Nicholson did not gain a settlement in 1779 in Andover, by then moving into that town *387 and living on his own freehold, yet he gained a settlement by virtue of the statute of 1789, c. 14. The first section of this act provided that any citizen seised of an estate of freehold in any town, of the annual income of ten dollars, and residing thereon or within the town, occupying the same for two years, should gain a settlement in that town. This act passed June 23, 1789, when Nicholson lived on his freehold estate in Andover, of greater annual value than ten dollars, which he has ever since occupied, and consequently, it is contended, gained a settlement in Andover, on the 23d of June, 1791.
This conclusion was objected to by the defendants’ counsel. He reasoned from a further clause in the same act, and from the provisions of some subsequent statutes. In the same * section of the statute of 1789, it was further provided, [ * 441 ] that any person of the age of twenty-one years, residing in any town two years successively, without being warned to depart the town, should gain a settlement there. By the additional statute of 1790, c. 39, the time was prolonged to three years. By the second additional statute of 1791, c. 44, the time was further extended to four years. By the third additional statute of 1792, c. 69, the time was prolonged to five years. All these acts are repealed by the statute of 1793, c. 34.
The defendants’ counsel argued that from a view of these several acts, a freeholder occupying his freehold for two years under the statute of 1789, did not gain a settlement; because, as he insisted, the subsequent acts, in requiring further times of residence without warning before a settlement could be gained, also extended the times of occupancy of a freehold, before the expiration of which a settlement by estate could not be gained ; and an interval of two years had not elapsed between the passing of any two successive acts. He admitted that Nicholson, by a three years’ occupancy under the last statute, gained a settlement in Andover; but not until Feb. 11, 1797, when his daughter, Elizabeth, was emancipated, and no longer a member of his family.
But after consideration we are all of opinion that Nicholson gained a settlement in Andover, under the statute of 1789, by the occupancy of his freehold for two years. In that statute several different methods are described by which a settlement may be gained. One is the occupancy of a freehold by the owner for two years. Another method is the residing in any town, two years successively, by any person above the age of twenty-one years, without being warned to depart. These methods we consider'as independent of each other ; and, therefore, that the extension of the time of residence without warning, does not affect the gaining of a settlement by the occu *388 pancy of a freehold by the owner. And if the free- [ * 442 ] holder has been warned to depart the town * within two years after his occupancy commenced, yet if he continued his occupancy two years, he would gain a settlement notwithstanding the warning.
If this opinion be correct, Nicholson, the father, gained a settlement in Andover, on the 23d of June, 1791, when his daughter was a member of his family, about sixteen years old, and who also through him gained a derivative settlement in the same town. In forming this opinion, we have considered Nicholson’s farm, agreeably to the consent of the parties, as of the annual income of ten dollars, although the report has stated only the price of the farm at 1000 or 1200 dollars, which certainly must be of greater annual value than 10 dollars.
The counsel for the defendants has further argued that, admitting the settlement of Elizabeth and her children was in Andover, yet Salem cannot maintain this action, because the father is able to maintain his daughter and grandchildren. This argument is founded on the second section of the statute of 1793, c. 59, in which it is enacted that the overseers of the town in which a pauper Is settled, shall take care that such pauper is suitably supported at the expense of the town, provided that certain kindred of the pauper, of sufficient ability, if he has any, shall be holden to support him in proportion to their ability.
When this objection was made, it appeared to deserve attention; but upon consideration, we think it cannot prevail. Upon looking into the whole section, and comparing it with the eighth section, which gives the present action, we are satisfied that the kindred of the pauper cannot be called on to contribute to his support, but by the overseers of the town in which he is settled, or by some other of his kindred; and that when the overseers of any town, in which the pauper is not settled, shall provide for his relief, when fallen into distress, .their only remedy for compensation is against the town in which the pauper is settled, and not against any of his kindred (4).
We are of opinion that the direction of the judge was right, and that judgment must be entered according to the verdict.

 [ Wells vs. Horton, 2 Car. & P. 383.—Scago vs. Deane, 4 Bingh. 459.—Wing vs. Mill, 1 B. & A. 104 —Andover and Medford Corporation vs. Gould, 6 Mass. 40.— Davenport vs. Moore, 15 Mass. 85.—Smith vs. Jameson, 5 D & E. 603.—Belfast vs. Leominster, 1 Pick. 123.—Lee vs. Muggridge, 5 Taunt. 36.—Sed vide Mills vs. Wyman, 3 Pick. 207.—Littlefield vs. Shee, 2 B. & Ad. 811.—And the cases collected in Chitty on Contracts, pp. 40, 41, 42, 43, 44 —Cook vs. Bradley, 7 Con. R. 57.—Smith vs. Ware, 13 Johns. 257.—Edwards Wife vs. Davis, 16 Johns. 281—283.—Early vs. Mihon, 19 Johns. 147.—Kebourn vs. Bradley, 3 Day, 350.—Ed.]

3) Rex. vs. Inhabitants of Aythorp, Reading, Burr. Sett. Cases. 412.

 [Sayward vs. Inhabitants of Alfred, 5 Mass. 244.— Ed.]