KARL I. TORNROOS *vs.* R. H. WHITE COMPANY.

SAME *vs.* AUTOCAR COMPANY.

KATHERINE A. TORNROOS *vs.* R. H. WHITE COMPANY.

SAME *vs.* AUTOCAR COMPANY.

Suffolk.    November 10, 1914. — February 27, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Agency,* Existence of relation. *Negligence,* In use of automobile. *Practice, Civil,* Exceptions. *Parent and Child. Husband and Wife.*

A corporation which was a manufacturer of automobiles sold to a corporation which was the proprietor of a department store in a city a number of automobile trucks and agreed in writing to furnish with each truck without cost for seven days a chauffeur who was a skilled mechanic and who would instruct the store corporation's men, and to "garage" the trucks for twelve months. During the

seven days the chauffeurs took the trucks from the automobile corporation's garage to the stable of the store corporation where one of that corporation's men got into each truck which thereafter was used in the delivery of goods of the store corporation during the day, the employees of the store corporation giving directions as to the streets and houses to which the trucks should be driven and the speed and manner of the driving being wholly within the control of the chauffeurs. At the close of the day the store corporation's employees were left by the chauffeurs at its stables and the trucks then were driven by the chauffeurs to the garage of the automobile corporation. In the morning of a day in the seven day period, when one of the trucks was being driven from the automobile corporation's garage to the stable of the store corporation and when only the chauffeur was upon it, a traveller upon the highway was injured through negligence of the chauffeur and brought separate actions against the corporations to recover for personal injuries. *Held,* that in the particular business in which he was engaged at the time of his negligence the chauffeur was the servant of the automobile corporation and not of the store corporation and, therefore, that a verdict should be ordered for the defendant in the action against the store corporation and that a verdict for the plaintiff was warranted in the action against the automobile corporation.

If, at the trial together of two actions, one against a merchant and the other against a dealer in automobiles for personal injuries caused by the plaintiff being run over by an automobile sold by the dealer to the merchant, a contract in writing which included the terms of sale of the automobile and an agreement as to its operation for a certain period by a chauffeur of the dealer becomes determinative of the question, whose servant the chauffeur was at the time of the accident, and if there is admitted in evidence a bill receipted by the dealer which after the accident had been presented by the dealer to the merchant and paid by him and which contained the statement, "Cars operated by our employees only at owner's risk," and if the trial judge subject to an exception by the dealer instructs the jury that this receipt was not part of the contract of sale, it is immaterial whether an interpretation by the judge of the above quoted language of the receipted bill, to the effect that it meant merely that the dealer assumed no responsibility to the merchant for an injury to the automobile, was correct, because the receipted bill was not material to any issue in the case and its interpretation, right or wrong, was harmless.

Where a husband abandons his wife and she is compelled to support and care for a minor child of the husband and herself, she becomes entitled to collect such child's earnings, and, if he is injured through negligence of a third person, to maintain an action against such third person for the loss of the services of the child.

FOUR ACTIONS OF TORT, the first two for personal injuries caused by the plaintiff, a minor, being run over by an automobile. The other two actions were by the mother of the plaintiff in the first two actions for consequential damages. Writs dated November 14, 1911.

In the Superior Court the cases were tried together before *Wait,* J. The material facts are stated in the opinion. In each of the

first two cases the jury found for the plaintiff in the sum of $4,000, and in each of the other two they found for the plaintiff in the sum of $2,250. The defendants alleged exceptions.

*G. L. Mayberry,* (*H. L. Sampson* with him,) for the defendant R. H. White Company.

*W. H. Hitchcock,* for the defendant Autocar Company.

*T. H. Buttimer,* (*N. P. Sipprelle* with him,) for the plaintiffs.

RUGG, C. J. The material facts out of which these actions arise are these: The Autocar Company sold to the R. H. White Company two motor trucks, and agreed as a part of the contract to furnish with each for seven days without cost a chauffeur, who was a thorough mechanic and who would instruct the men of the R. H. White Company, and to "garage" the trucks, including the making of all ordinary repairs, for twelve months. The contract was in writing. During the seven day instruction period chauffeurs took the trucks from the garage of the Autocar Company and proceeded to the stable of the R. H. White Company where one of its men boarded each of the trucks, which thereafter were used in the delivery of goods of the R. H. White Company until the end of the day, when the men of the R. H. White Company left and the trucks were then driven from its stable to the garage of the Autocar Company by the chauffeurs. During the day the servants of the R. H. White Company gave directions as to the streets and houses to which the trucks should be driven in the delivery of goods, but the manner and speed of driving was wholly within the control of the chauffeurs, who were skilled mechanics in the general employ of the Autocar Company. On one of the journeys from the garage of the Autocar Company to the stable of the R. H. White Company during the seven day period, and when the chauffeurs employed and paid by the Autocar Company were alone on the trucks, the plaintiff Karl was injured, as has been settled by the verdict of the jury, while he was in the exercise of due care, through the negligence of the driver of one of the trucks. The jury found specifically that the negligent chauffeur at the moment of the accident was a servant both of the R. H. White Company and of the Autocar Company. It is contended by each of the defendants that as to it this finding was unwarranted and that a verdict should have been directed in its favor.

The general principles of law which govern cases of this kind have been considered frequently and are well settled. In their application distinctions of nicety may arise when one in the general employment of another is by his consent lent or hired by his master to work for a third in some special service. The test to determine the legal responsibility of that third person for his conduct is, whether in the particular service performed by him he continues subject to the control and direction of his master as to the means to be employed, and the result to be achieved, or becomes subject to that of the third person. This must be considered, as was said by Chief Justice Knowlton in *Shepard* v. *Jacobs*, 204 Mass. 110, at page 112, not merely with reference to "the general business which the act is intended to promote, but the particular business which calls for the act, in the smallest subdivision that can be made of the business in reference to control and proprietorship." The particular business which the negligent chauffeur was engaged in doing at the time of the accident was that of driving the truck. The driving of the truck during the seven day period was by the terms of the contract exclusively within the control and direction of the Autocar Company. The truck was being driven to the place where the instruction of the servant of the R. H. White Company was to begin. But that place had not been reached. The man to be instructed had not yet appeared on the scene. The instruction had not begun. No employee of that company was on the truck at the time. It was not being used in its business of delivering goods. It was not even being employed for the instruction of its servant. It was wholly in the management and control of the Autocar Company. It was being taken by that company pursuant to its contract to a point where further performance of its contract was to take place. The business of the R. H. White Company had not begun. The only matter about which that company could then have given any authoritative direction was at most as to the place where the instruction should be given and to which the truck should be taken for that purpose. But it could say nothing respecting the route, speed or general or particular method of driving. Its representative was not present and was not intended to be present at the time of the accident, because its business then was not being done. It was not in a position and had no power to give any direction as to the

concrete act of neglect which caused the injury. The chauffeur was not selected by the R. H. White Company. It did not hire him nor could it discharge him, or refuse to accept him provided he was competent; it did not pay him directly or indirectly save as his compensation may have have been included in the cost of the truck. The circumstance that the truck belonged to the R. H. White Company is an important but not decisive factor. See *Trombley* v. *Stevens-Duryea Co.* 206 Mass. 516. It is not quite enough to countervail those mentioned, which, being substantially undisputed, show as matter of law that the injuries to the plaintiffs were not caused by the R. H. White Company.

On this point the case is close to the line and there are none of our decisions precisely in point, but *Bowie* v. *Coffin Valve Co.* 200 Mass. 571; *S. C.* 206 Mass. 305, *Dutton* v. *Amesbury National Bank*, 181 Mass. 154, and *Fleischner* v. *Durgin*, 207 Mass. 435, are somewhat analogous and like conclusions there were reached. *Kellogg* v. *Church Charity Foundation*, 203 N. Y. 191; *S. C.* Ann. Cas. 1913 A, 883 and note, 886, and *Quarman* v. *Burnett*, 6 M. & W. 499, go further than is required to relieve the R. H. White Company from liability. In those two cases the defendants owned the vehicles, which were being used in their business by a driver furnished under contract by a third person who alone had the authority to hire, discharge and direct the driver as to the details of his duty of driving; and they were exonerated from liability. Other cases on all fours with the cases against the R. H. White Company hold that the defendant is not liable. *Neff* v. *Brandeis*, 91 Neb. 11. *Ouellette* v. *Superior Motor & Machine Works*, 157 Wis. 531. See also *Meyers* v. *Tri-State Automobile Co.* 121 Minn. 68; *Dalrymple* v. *Covey Motor Car Co.* 66 Ore. 533.

It is plain from what has been said that the Autocar Company is liable. The injuries were the direct result of a negligent doing of its business by its servant hired by it and at the moment engaged in the performance of his duty as its employee. The actions against that defendant are well within numerous of our cases. They are in legal intendment almost exactly like *Roach* v. *Hinchcliff*, 214 Mass. 267. They are in principle indistinguishable from *Driscoll* v. *Towle*, 181 Mass. 416, *Corliss* v. *Keown*, 207 Mass. 149, *Hunt* v. *New York, New Haven, & Hartford Railroad*,

212 Mass. 102, *Brow* v. *Boston & Albany Railroad,* 157 Mass. 399, *Hussey* v. *Franey,* 205 Mass. 413, *Pigeon's Case,* 216 Mass. 51, 54, and *Standard Oil Co.* v. *Anderson,* 212 U. S. 215.

The Autocar Company furnished chauffeurs for the operation of the trucks to the R. H. White Company after the expiration of the seven day period. Bills for these were put in evidence. They covered the entire period beginning with the first day with a credit "less 7 days no charge." They contained this clause, — "Cars operated by our employees only at owner's risk." The trial judge rightly ruled that this sentence, contained in bills rendered after the accident and not referred to in any way in the written contract between the two defendants, were no part of that agreement. In view of that ruling, it is not necessary to decide whether his interpretation of the sentence was correct or not.

A further question arises as to the right of the plaintiff, Katherine, to maintain an action for expenses incurred by her for the care of and attendance upon her minor son Karl growing out of his injuries and for the loss of his services suffered by her during his nonage. The undisputed evidence showed that before the accident, she had been deserted by her husband, the father of the plaintiff Karl, and at the time of the trial he had been absent four years. His wife did not know where he was living nor even if he were alive. Adjudication had been entered against him on a charge of non-support of his family: thereafter for about six months he paid his wife a weekly allowance and then he disappeared. Since then the mother has supported the son entirely, who had no other means of maintenance. He had performed for his mother whatever service was within the range of his age and ability.

The duty rests upon the father to nurture and support his children in sickness and in health. Filial fidelity demands from children as a reciprocal obligation a degree of service for the father measured by age, ability and reasonable paternal requirement. The father is entitled to such service or the fruit of it if the child is employed by others. These respective duties and obligations have been recognized in the common law from an early day and rest upon deeply rooted natural sentiments. In the event of the death of the father a widowed mother who maintains a home and keeps a family of minor children together and supports

them in part from their own services or earnings, stands in his stead as head of the family in respect of civil responsibility and right. She is entitled to recover damages for expenses incurred and loss of service suffered by a tortious injury to her minor child. *Horgan* v. *Pacific Mills,* 158 Mass. 402. It has been held also that a wife deserted by her husband may put her minor children out to proper service and assign their wages for the support of the family. A father may forfeit his right to the custody and services of the child by his misconduct. *Dumain* v. *Gwynne,* 10 Allen, 270, 272. *Abbott* v. *Converse,* 4 Allen, 530. The right of the father and mother in respect of their children, as was said by Mr. Justice Sheldon in *Purinton* v. *Jamrock,* 195 Mass. 187, at page 201, "is not an absolute right of property, but is in the nature of a trust reposed in them, and is subject to their correlative duty to care for and protect the child: and the law secures their right only so long as they shall discharge their obligation." The evidence in the case at bar warranted a finding of abandonment by the father of his parental obligations and duties, such as would bar him from all right to collect the son's earnings or to maintain an action for loss of his services. *McCarthy* v. *Boston & Lowell Railroad,* 148 Mass. 550. There appears to be no sound distinction in principle between a mother widowed and one who has been deserted by a faithless husband and father, and who thus has thrust upon her in fact as large or perhaps an even greater burden of expense and responsibility than if she were a widow. The natural obligations as to nurture and support are as extensive in the one case as in the other. Her necessity is as urgent in one case as in the other. So far as lies in his power, the trust of the father has been abrogated by his act. Sometimes her rights in such cases have been put on the ground of agency from the husband implied from his conduct.

It has been the tendency of our decisions and the positive trend of our statutes to ameliorate the common law disabilities of married women. *Nolin* v. *Pearson,* 191 Mass. 283. *Bunnell* v. *Hixon,* 205 Mass. 468. *Wing* v. *Deans,* 214 Mass. 546. She now stands before the law almost, if not quite, on the same footing as the husband as to all property and business rights, domestic privileges and family immunities, though not charged with equal responsibilities. In case of discord or separation, she has the same

rights as the husband to custody of children. R. L. c. 152, § 28; c. 153, § 37. She is made responsible for pauper support of her children equally with her husband, except that she is exempt from the liability to criminal prosecution in this regard which rests upon the husband. R. L. c. 81, § 10. St. 1909, c. 180, imposes upon both husband and wife penalties for criminal neglect of their children, while the uniform desertion act, St. 1911, c. 456, § 1, makes either the father or the mother liable to severe punishment for desertion or wilful refusal properly to care for and rear their children.

It follows that the right of the wife to maintain an action in a case like the present, even though the husband is living, may rest, also, upon the natural rights and obligations of a mother thrown upon her own resources and compelled by the wrongful act of the husband to assume the duties and discharge the obligations of both parents. This conclusion is supported by decisions of other courts. *McGarr* v. *National & Providence Worsted Mills,* 24 R. I. 447. *Yost* v. *Grand Trunk Railway,* 163 Mich. 564. *Savannah, Florida & Western Railway* v. *Smith,* 93 Ga. 742. *Magnuson* v. *O'Dea,* 75 Wash. 574. *Nugent* v. *Powell,* 4 Wyo. 173, 195.

There is nothing at variance with this conclusion in *Gleason* v. *Boston,* 144 Mass. 25, which held the pauper obligation as to support of minor children under such circumstances did not rest on the mother. This was before the enactment of St. 1898, c. 425, § 3, which made a mother responsible for such support. We do not mean to intimate that the legal obligation of the father is annulled.

The result is that the exceptions of the Autocar Company must be overruled. Those of the R. H. White Company must be sustained, and as verdicts ought to have been directed in its favor, and the cases seem to have been tried fully and fairly, judgment must be entered for it in accordance with St. 1909, c. 236.

*So ordered.*