TOWN OF PLYMOUTH *vs.* SIKES A. HEY.

Plymouth. November 7, 1933. — February 15, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Illegitimacy. Needy Person. Words,* "Kindred," "Consanguinity."

The father of the mother of an illegitimate pauper is not the pauper's kindred within the meaning of G. L. (Ter. Ed.) c. 117, § 6, and is not liable for the pauper's support, although he lives in the Commonwealth and is of sufficient ability to furnish such support.

BILL IN EQUITY, filed in the Superior Court on June 27, 1932, described in the opinion.

The suit was heard by *J. J. Burns*, J. Material facts are stated in the opinion. The judge ordered the entry of a decree dismissing the bill and reported the suit for determination by this court.

The case was submitted on briefs.

*A. P. Richards & A. R. Hussey, Jr.*, for the plaintiff.

*A. S. Feinberg*, for the defendant.

CROSBY, J. This suit is brought under the provisions of G. L. (Ter. Ed.) c. 117, §§ 6–11, to compel the defendant

to reimburse the plaintiff for the expense incurred for the support of Gladys M. Hey, an illegitimate daughter of Gladys L. Hey, deceased daughter of the defendant, and to require the defendant to provide for the future support of the child. The case was heard by a judge of the Superior Court who found and ruled that the bill should be dismissed with costs. He found that at the time of her death Gladys L. Hey retained a settlement in Plymouth; that she left no property and that her illegitimate child, Gladys M. Hey, is without any means of support; that the defendant has sufficient ability to support the child, and that $5 a week is a reasonable sum for her support.

G. L. c. 117, § 6, as amended by St. 1928, c. 155, § 15, provides: "The kindred of such poor persons, in the line or degree of father or grandfather, mother or grandmother, children or grandchildren, by consanguinity, living in the commonwealth, and of sufficient ability, shall be bound to support such poor persons in proportion to their respective ability." This statute is substantially the same as the original statute dealing with this subject, enacted in 1692 and reënacted in 1788 and 1793, and found in each subsequent revision of the laws, and since at common law an illegitimate child was regarded as the child of no one, the defendant cannot be charged with liability.

It is the contention of the plaintiff that the terms "kindred" and "consanguinity" mean relationship by ties of blood in the direct line from a common ancestor, and that the words according to their natural import and accepted meaning refer to the children, grandchildren, parents and grandparents of paupers irrespective of any question of the legitimacy of the relationship. There is no decision of this court which interprets the meaning of this statute or its earlier enactments with reference to the precise question here presented. The fact that the pauper in this case is a minor has no significance. No greater or less duty is imposed by the statute on the kindred of paupers who are minors than upon the kindred of those who are of full age. At common law no obligation rested upon a father to support his adult children. *Treasurer & Receiver General* v.

*Sermini,* 229 Mass. 248, 251. *A fortiori* no duty to support rested upon grandparents. The duty to support paupers as such is entirely imposed by statutes. It was said in *Wright* v. *Wright,* 2 Mass. 109, 110: "In legal contemplation, a bastard is generally considered as the relative of no one." In construing Pub. Sts. c. 125, § 4, as amended by St. 1882, c. 132, it was said by Knowlton, J., in *Sanford* v. *Marsh,* 180 Mass. 210, 211: "By the common law a bastard is *nullius filius.* He can be the heir of no one, nor have heirs, except of his own body. He has no ancestors from whom any inheritable blood can be derived. The common law on this subject is in force in Massachusetts, except as it has been changed by statutes. The statutes which have been adopted here have all been construed strictly." In *Cooley* v. *Dewey,* 4 Pick. 93, 94, it was said that "there seems to be no maxim of . . . [the common] law less questionable, than that a bastard is *filius nullius,*" it being there held that the mother of an illegitimate child does not inherit his estate. See also *Gibson, appellant,* 154 Mass. 378, 381. *Kent* v. *Barker,* 2 Gray, 535, held that an illegitimate child unintentionally omitted to be provided for in the will of its mother was not entitled under Rev. Sts. c. 62, § 21, to the share of her estate which it would have taken under Rev. Sts. c. 61, § 2, if she had died intestate. It was held in *King* v. *Thissell,* 222 Mass. 140, 141, that the words "issue of a deceased child" in R. L. c. 135, § 19 (now G. L. [Ter. Ed.] c. 191, § 20), should be construed to mean legitimate issue of any legitimate deceased child. This case was cited with approval in *King* v. *Dolan,* 255 Mass. 236. Although most of the decided cases in this Commonwealth respecting an illegitimate child deal with questions of inheritance, they plainly show that "child" and "children" at common law have been interpreted to mean only a legitimate child or children. It follows by the same reasoning that the term grandchild must be interpreted as meaning legitimate grandchild. In *Kent* v. *Barker,* 2 Gray, 535, at page 536, it is said: "It is well settled, indeed it is conceded, that at common law the words 'child' and 'children' mean only legitimate child and

children.  Illegitimate children are the children of nobody, and have no rights of inheritance."  The plaintiff cites *Gritta's Case*, 236 Mass. 204, which arose under the workmen's compensation act.  St. 1911, c. 751.  It was there held that the word "children" did not include an illegitimate child, but that the word "dependents" in Part V, § 2, of the act included an illegitimate child who was found to be a member of the employee's family.  It was held in *Hiram v. Pierce*, 45 Maine, 367, under Rev. Sts. of Maine (1857) c. 24, § 9, a statute similar to G. L. (Ter. Ed.) c. 117, § 6, that in law an illegitimate child is *filius nullius* and has no kindred by consanguinity and that such person could have no heirs but of his own body.  In *Hillsborough v. Deering*, 4 N. H. 86, it was held that a father was not bound to support the illegitimate child of his daughter, and that the child was not his grandchild within the meaning of the statute.  To like effect see *State v. Miller*, 3 Pennewill (Del.) 518.

Neither in the original statute enacted in 1692 nor in any subsequent revisions or codifications of it does it appear that illegitimate children are included.  Whenever somewhat analogous statutes have been considered by this court it has without exception been held that the words "child" and "children" refer only to legitimate children.  The word "kindred" as used in G. L. (Ter. Ed.) c. 117, § 6, has no application to the present case.  The statute which imposes a financial burden upon the persons therein named is to be construed strictly.  It appears, as pointed out by the trial judge, that the statutes from 1692 down to the present applicable to the support of bastard children have been grouped under the title "Of the Maintenance of Bastard Children," Rev. Sts. c. 49, Gen. Sts. c. 72.  In none of these codifications of the law applicable to such persons is there a provision imposing responsibility for their support upon the maternal next of kin.  It cannot be thought that the Legislature in reënacting the statute in substantially the same terms intended any change of meaning.  *Opinion of the Justices*, 237 Mass. 591, 594.  The words "by consanguinity" in the statute cannot be construed to include illegitimate children.  The words "by

consanguinity" are apt to distinguish them from the persons named by affinity.

It results that as no liability for the support of this child is imposed upon the defendant either by the common law or by statute (G. L. [Ter. Ed.] c. 117, § 6), the bill cannot be maintained. In accordance with the terms of the reservation a decree is to be entered dismissing the bill.

*Ordered accordingly.*