Carr, J.
This is an action of contract in which an undertaker seeks to recover for his services in furnishing the funeral of the father of the two defendants. The facts stated in the report are meagre. It is set forth that counsel agreed that on September 15, 1936, Charles E. Lockhart, *404 who was the blood father of the two defendants, died leaving no estate; that the plaintiff furnished the funeral of the deceased at the request of the widow, who was also indigent, and at her request charged the funeral to the defendants. The defendants never gave the widow authority so to do, or never had anything to do with ordering the funeral and have denied liability and that the charges were fair and reasonable.
The plaintiff maintains that the person who is responsible for the necessary support of the deceased while living is liable for his burial expenses. The plaintiff concedes that at common law a son was not responsible for the support of his parent. It contends, however, that by virtue of Gen. Laws, (Ter. Ed.) Ch. 117 relating to the support of poor persons and especially by §6 which provides that certain kindred of poor people including children, if of sufficient ability, and living in the Commonwealth, shall be bound to support them, the duty to support, on which it may rely, is established.
At the outset, we find the report inadequate. The trial judge, besides denying the plaintiff’s request for ruling, ruled that regardless of the fact that the defendants are blood children of the deceased and live in the Commonwealth and regardless of whether or not the defendants are of sufficient ability, the defendants, as matter of law, are not liable to the plaintiff. The report does not state that the defendants lived in the Commonwealth and were of sufficient ability to bear the expense, nor does it set forth evidence from which these facts might be inferred. It is obvious that the ruling that the plaintiff could not recover was made without hearing any evidence. Counsel for both parties in argument before us agreed that such evidence existed and was offered to the trial judge. If we thought *405 that such evidence would help the plaintiff we would send the report back for amendment. We think, however, that even with such facts the plaintiff could not prevail. He realizes that we appear to be passing on an academic question not supported by provable facts. The trial judge in his ruling assumed that residence and ability existed and we, therefore, pass on the issues as though the evidence were in the report.
If the duty to bury could be forced upon the defendants in this case certain other facts would be necessary to fix liability for the funeral. It seems clear that where the duty rests on a person to bury and he neglects it, one who by reason of the necessity of the situation goes to expense for the funeral may recover of the one who ought to have performed the duty. But it must appear from the situation that he was not a mere intermeddler. Cunningham, v. Reardon, 98 Mass. 538, 539. McGrath v. Sheehan, 1936 A. S. 2429. Keener on Quasi Contracts, p. 341 et seq., and cases there cited and quoted.
If there had been a full trial, the limits of the plaintiff’s case might have been discovered. It might have appeared under what circumstances the funeral was arranged, whether the situation required immediate arrangements without consulting the defendants, whether they were notified or consulted, whether at the time they were near at hand or where they could not be reached. If, on further appeal, the court of last resort took a different view of the law, such evidence might be important. We feel, however, that the situation is so clear that in making this decision on the stated and assumed facts we are doing the plaintiff no injustice.
In Cunningham v. Reardon, 98 Mass. 538, 539, an action in which the plaintiff was allowed to. recover of the defend *406 ant for the expense of burying his wife, whom he had driven from home by cruelty, appears this dictum. ‘ ‘ The responsibility for funeral expenses is not a new and distinct cause of action, different in kind, or in the rules by which it is created; hut an incident to the obligation to furnish bodily support.”
On this dictum the plaintiff bases his thesis that the duty to support carries the duty to bury. He fortifies his position with quotations to similar effect from Jackson “Law of Cadavers” (1936) p. 79 and Perley “Mortuary Law” p. 78.
We think the plaintiff’s case fails for three reasons.
1. Support is not the basis of duty to bury.
2. Support as defined in the Statute does not include burial.
3. Whatever duty of support is created by the Statute, the plaintiff cannot use to its advantage.
Without undertaking to define the limits of domestic liability, we agree that at common law, under some circumstances, the duty of burying a wife rests upon the husband; Cunningham v. Reardon, 98 Mass. 538, McGrath v. Sheehan, 1936 A. S. 2429, Same case, 1936 Mass. A. D. R. 60, although it is held that as between husband and the estate of the wife leaving property, the estate is primarily liable; Constantinides v. Walsh, 146 Mass. 281, Morrissey v. Mulhern, 168 Mass. 412, and that the father has the duty to bury his minor child; Schouler Marriage and Divorce, 6th Ed. §792, and that when the father dies or deserts, the mother becomes the head of the family and doubtless the duty as to children falls on her. Tornroos v. R. H. White Co., 220 Mass. 336, 341.
But this does not prove that the duty to bury grows out of the duty to support.
*407 In Magrath v. Sheehan, 1936 A. S. 2429, same case, 1936 Mass. A. D. R. 60, the parties at least believed that the question was raised whether a husband was under duty to bury a wife who was living apart under such conditions that he would not be under duty to support her. (cf. Alley v. Winn, 134 Mass. 77, 79; Sturbridge v. Franklin, 160 Mass. 149; Fisher v. Drew, 247 Mass. 178, 182.) Both argued this point in their briefs to which reference is here made. Doubtless it was inartificially raised. This issue was met in the Appellate Division. Bolster, C. J., said: “But the present case is not determined by decisions upon rights and liabilities while both husband and wife remained alive, although we are not unaware of the fact that in some opinions, an analogy has been attempted.” And again “Marital discord should stop at the grave.” In the Supreme Judicial Court the question went off on the technical meaning of “living apart for justifiable cause.” The question the parties hoped to support or defeat was not touched even as dictum. In such discussion as was accorded the question of marital duties nothing was said of support carrying the duty to bury. On the contrary the court said: “The duty of a husband to provide a proper funeral for his dead wife and his legal liability to another for reasonable expenses justifiably incurred in providing such a funeral rest upon fundamental concepts of decency and humanity. It arrives if at all by implication of law ‘from the necessity of the case.’ ”
It is stated that “at common law it is the duty of an individual under whose roof a poor person dies to carry the body decently covered to the place of burial and to refrain from doing anything which prevents in any way a suitable funeral.” Finley v. Atlantic Transport Co., 220 N. Y. 249, *408 255. Schouler Marriage & Divorce, 6th Ed. § 747. In short it seems that burial by husband or father and perhaps in some instances by the mother are common law duties coordinate with their other marital or parental duties.
Assuming, for the purpose of this case, that the duty to support carries the duty to bury, we now come to an examination of the plaintiff’s, contentions as to the effect of Gen. Laws, (Ter. Ed.) Ch. 117.
Section 6 of the chapter is based on the St. of 43 Elizabeth 2 § 7 which with other provisions is re-enacted in the Province Laws 1692-3 Ch. 28 and the laws of the Commonwealth in 1788 and 1793. The whole statute takes form in the Acts of 1793 Ch. 59 and in that form, with slight amendment, is continued to the present day (cf. Ch. 117 & Amendments). Gleason v. Boston, 144 Mass. 25, 27. Plymouth v. Hey, 285 Mass. 357, 358. cf. Pauper Laws of Mass. 1810 by Jonathan Swift.
This legislation unique in its maintained consistency shows a complete scheme for the relief and support of poor and indigent persons in the Commonwealth. The burden of support is placed upon the towns, at present, through their Welfare Departments, with an ultimate liability on relatives in the degree of father, mother and children by consanguinity if living in the Commonwealth and of sufficient ability, (Before Acts 1936 Ch. 108 grandparents and grandchildren were included); — this liability to be assessed and apportioned by the Superior Court sitting in equity on application of town or kindred put to expense. §§ 1; 6; 7. It is provided in § 17 that the welfare board of each town shall also relieve and support all poor persons residing or found therein, having no settlement in Commonwealth and if they die shall bury them. It is provided in this section that the board “shall also decently bury all deceased *409 persons who, although without means of support while living, did not apply for public relief, and all unknown persons found dead.” It is provided in § 24 that every town shall be liable for any expense necessarily incurred under this chapter for the relief of a person in need of public assistance therein by any person not liable by law for his support after notice and request to the welfare board until provision is made by them.
These are some of the salient features of this legislation applicable to the subject before us.
Referring to the sixth section of this statute which relates to “kindred” the court has said, “The Statute which imposes a financial burden upon the person therein named is to be construed strictly.” Plymouth v. Hey, 285 Mass. 357, 360. cf. Smith v. Spooner, 3 Pick. 229, 230. cf. Commonwealth v. Beck, 187 Mass. 15, 17.
The first question that presents itself is whether the word “support” found in the phrase “bound to support” in the 6th section can be held to include burial. It can have no wider meaning than it does in § 1 where the duty is placed on the town to give support which is the same support that under § 7 the town can have apportioned among the kindred described in § 6. But this duty of the town to support and consequently the duty of kindred cannot include the duty to bury, for if it did there would be no need of the separate requirements in the first sentence of § 17 for towns to relieve and support persons having no settlement and if they die to decently bury them. If support, as used in this chapter, included burial there would be no requirement for the second sentence in § 17 that they shall also decently bury all deceased persons who, although without means of support while living, did not apply for public relief, and all unknown persons found dead with the provision in the third *410 sentence for recovery from kindred chargeable by law for their support, etc.
In England the question was decided in 1840 under the Statute of Elizabeth, where attempt was made to make the overseers meet the expense of burial of a deceased person. The Court said, “But in the present case we are thrown necessarily on the Statute of Elizabeth; the overseer is a statutory office, dealing with a statutable fund, and accountable for its application to ■ statutable purposes. The language of that statute leaves no doubt. The relief and employment of the chargeable poor are its objects; the fund is created for them and cannot be diverted from them” . . . “and we cannot accede to the argument that the burial of a pauper receiving relief, but not dying in any parish house, can be brought within the objects of the statute, expressed or implied.” Queen v. Steward, 12 A & E (Eng.) 773, 778.
Finally, the statutory duty of kindred under § 6 is owed only to the town, except so far as kindred may enforce contribution among themselves. It cannot be used by third persons. This is held in many jurisdictions but the reason perhaps is put most clearly in New York.
“The duty of a parent to maintain his offspring, until they attain the age of maturity is a perfect common law duty. The liability of a child to support its parents, who are infirm, destitute, or aged, is wholly created by statute ; and it has been truly said, that the statute imposes on said relatives, duties unknown to the common law.” (Citing 1 Bl. Com. 448 & Rex v. Mundin, 1 Str. 190.) (The court here states a statute with provisions similar to our own for support by kindred.)
“Now, the duty of a child, of sufficient ability to maintain its poor and destitute parents, being an imperfect one, *411 not enforced at common law, and the statute having prescribed the manner in which it is to be enforced, and the extent of the penalty, the statute remedy is the only one to be resorted to. . . . Then the consequence necessarily follows, that no one who has afforded relief to indigent persons, from motives of humanity, or from any other consideration, can maintain a suit, as upon an implied contract, against children of such parents, arising merely from the duty which such child owes to its parents, to support them.” Edwards v. Davis, 16 Johns 281, 285.
The same rule is laid down in other states. Gray v. Spalding, 58 N. H. 345. Dawson v. Dawson, 12 Iowa 512.
The same rule has been stated in Massachusetts.
After referring to the provision of the statute of 1793, Ch. 59, providing that the overseers of a town shall suitably support ¿ pauper “provided that certain kindred of the pauper of sufficient ability, if he has any, shall be holden to support him in proportion to their ability” and dealing with an argument that a town in which the pauper was-not settled, which had given relief, should not sue the town of the pauper’s settlement but the kindred directly, the court said:
“Upon looking into the whole section, and comparing it with the eighth section, which gave the present action, we are satisfied that kindred of the pauper cannot be called on to contribute to his support, but by the overseers of the town in which he is settled, or by some other of his kindred.” Salem v. Andover, 3 Mass. 436, 441. cf. Sayward v. Alfred, 5 Mass. 244, 246.
One who through necessity is required to furnish support for a pauper whom he is not bound by law to support may fix liability of the town to reimburse by giving notice to the welfare board in accordance with Section 24. The town *412 can then seek reimbursement of kindred liable under Section 6 by proceeding under Section 7. No one need fear that the dead will go unburied. The duty to bury in proper cases is cast on the welfare department. Sections 14, 17. An undertaker finding himself in possession of the body of an indigent person can apply to the overseers for employment under these sections. It cannot be assumed that public officials will be unfair although perhaps the employment would not be as lucrative as under private contract.
It remains to comment on two cases on which the plaintiff places great weight. In Tornroos v. R. H. White Co., 220 Mass. 336, 342 in stating the tendency of decision and statute to ameliorate the common law disabilities of married women, the court referred to various decisions and statutes including Gen. Laws Ch. 81 § 10 (now Gen. Laws (Ter. Ed.) Ch. 117 §6). We do not understand that the court was interpreting the statute but using it as illustration. In Treas. & Rec. Gen. v. Sermini, 229 Mass. 248 the court stated that by the statute of 1793 Ch. 59 and those which continued it, the common law liability to support poor persons had been greatly enlarged and held a father liable for support, in a state hospital for insane, of a daughter who was over twenty-one years old and married. It did not pass on what support meant nor who could enforce the statutory liability of kindred. The act of 1909, Ch. 504 § 82 gave the Treas. & Rec. General the right to maintain the action. If the statutory liability of kindred to support ran to every one, as plaintiff contends, there would have been no need of the Act of 1909, Ch. 504, § 82.
The conclusion we have reached is strengthened by the fact that, though the statutory liability of kindred for support has been on the statute books from Provincial days, diligence of counsel has produced no ease in this Common *413 ■wealth where such liability as he now seeks to enforce has been sustained. The principle laid down in 1807 in Salem v. Andover, (3 Mass. 436) remains undisturbed.
What we have said sufficiently disposes of any claim of the plaintiff to rest his case on Gen. Laws (Ter. Ed.) Ch. 273 §§ 20, 21 and 23, giving criminal jurisdiction to enforce duties to support under very similar conditions to those in Ch. 117 where enforcement is on the civil side of the court.
Report dismissed.