JUDITH A. FERRITER & others[1] vs. DANIEL O'CONNELL'S
SONS, INC.

Hampden. February 6, 1980. — September 9, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS & ABRAMS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Action by
    spouse or child, Emotional distress, Election of remedies. *Husband
    and Wife*, Consortium. *Parent and Child*, Companionship and socie-
    ty. *Actionable Tort. Negligence*, Causing loss of consortium, Causing
    loss of parental society, Emotional distress. *Emotional Distress*,
    Physical injuries to another.

A child has a right to recover for loss of a parent's society and compan-
    ionship through a defendant's negligence if the child is a minor who is
    dependent on the parent both economically and in filial needs for
    closeness, guidance, and nurture. [509-517]
Allegations in a complaint that the plaintiffs, the wife and children of an
    employee seriously injured through his employer's negligence, suffered
    mental anguish and physical impairment as a result of observing the
    employee in the hospital immediately after the accident were suffi-
    cient to state a claim upon which relief might be granted. [517-519]
    HENNESSEY, C.J., and QUIRICO, J., dissenting.
Claims for loss of consortium and society by the wife and children of an
    employee who was injured in the course of his employment through
    the alleged negligence of the defendant employer were not barred by
    the Workmen's Compensation Act even though the employee accepted
    compensation payments under G. L. c. 152, § 23 [519-530]; nor did
    the Workmen's Compensation Act bar the plaintiffs' claims for
    negligent infliction of emotional distress [530]. HENNESSEY, C.J.,
    QUIRICO, J., and WILKINS, J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 7, 1979.

The case was heard by *Cross*, J., on a motion for sum-
mary judgment and was reported by him to the Appeals

[1] Jason R. Ferriter and Leah N. Ferriter, children.

Court.  The Supreme Judicial Court granted a request for direct review.

*Morton J. Sweeney* for the plaintiffs.

*Gerard L. Pellegrini* for the defendant.

LIACOS, J.  The plaintiffs, Judith A. Ferriter and her minor children, Jason R. and Leah N., filed a complaint and demand for jury trial on June 7, 1979, in the Superior Court for Hampden County.  The complaint alleged that the plaintiffs' husband and father, Michael Ferriter, was seriously injured as a result of the negligent, wilful, wanton and reckless conduct of the defendant, Daniel O'Connell's Sons, Inc. (O'Connell).  The complaint alleges that observing Michael's injuries has caused the plaintiffs to suffer mental anguish and that as a result of Michael's injuries their mental and physical health has been impaired.  Furthermore, the plaintiffs allegedly have suffered loss of consortium and society.  Thus, the plaintiffs prayed for damages of $3,000,000.  On July 5, 1979, the defendants moved for summary judgment.  The parties on September 26 filed a statement of agreed facts.  On October 3, a judge of the Superior Court denied the motion on the claims for loss of consortium and society, but granted the defendant's motion on the claims for mental anguish and impaired health.  The judge reported the case pursuant to Mass. R. Civ. P. 64, 365 Mass. 831 (1974), for a determination of the propriety of his rulings.  We granted the plaintiffs' application for direct appellate review.  We affirm the judge's first ruling, but reverse the second ruling.

According to the statement of agreed facts, the plaintiffs are the wife and two children, aged five and three, of Michael Ferriter.  While working as a carpenter for the defendant, Michael was seriously injured on May 18, 1979.  A one-to-two-hundred pound load of wood beams, which was hoisted in a nylon sling from the boom of a crane, fell fifty feet, and at least one beam struck Michael on the neck.  The persons hoisting the lumber, operating the crane, monitoring site safety, and supervising the work were O'Connell employees.  The defendant also supplied the materials and equipment used.

Since the accident, Michael Ferriter has been hospitalized and paralyzed from the neck down. The plaintiffs first saw him in this condition in the hospital. They neither witnessed the accident nor came on the scene of the accident when Michael was there. Michael receives $211.37 a week in workmen's compensation benefits from O'Connell's insurer. Although the plaintiffs fall within the statutory presumption of dependency in G. L. c. 152, § 35A, they receive no benefits because Michael's compensation exceeds $150 a week. See G. L. c. 152, § 35A.

The defendant employer attacks the plaintiffs' claims in two respects. First, it asserts that the counts for mental anguish and impaired health fail to state a claim upon which relief can be granted. Second, the defendant argues that the Workmen's Compensation Act, G. L. c. 152, bars the plaintiffs' claims.

1. The employer does not assert that the wife's and children's counts for loss of consortium and society fail to state a claim upon which relief can be granted. Although a wife's right to recover for loss of consortium is well established, *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153 (1973), a child's right to recover for loss of a parent's society and companionship through a defendant's negligence is problematic. *Id.* at 165 & n.41. We consider whether such a right exists before addressing the issue of whether, on these facts, a cause of action is barred by G. L. c. 152.

The question whether a child can recover for loss of a parent's companionship and society caused by a defendant's negligence is a matter of first impression in Massachusetts. However, in *Feneff* v. *New York Cent. & H.R.R.R.*, 203 Mass. 278, 281-282 (1909), rejecting a wife's claim for loss of consortium for injuries to her husband, the court in essence equated a wife's interest in spousal consortium with a minor child's interest in parental society. In *Diaz* v. *Eli Lilly & Co.*, *supra* at 163, we characterized as "vulnerable" the *Feneff* court's reasoning supporting rejection of the wife's claim. We recognized a wife's right to recover for loss of consortium resulting from personal injuries to the husband.

The wife's interest encompassed not only sexual relations with her husband, but also his society and companionship. *Diaz, supra* at 161. The combination of *Diaz* and the dicta in *Feneff* force recognition that a minor child has a strong interest in his parent's society, an interest closely analogous to that of the wife in *Diaz*. The court in *Diaz* expressly reserved the question whether a child has a right to recover for loss of a parent's society caused by a defendant's negligence. *Id.* at 165 & n.41. We are skeptical of any suggestion that the child's interest in this setting is less intense than the wife's.

As in *Diaz*, to take the measure of the present action, we consider this question in the perspective of the common law. Under the doctrine of paterfamilias, an injury to the family was an injury to the father. Neither children nor wives could bring actions in their own names to recover for personal injury. The action and any damages obtained belonged to the father.[2] The law also furnished the father with various actions to protect family relationships. In *Diaz, supra* at 154-158, we traced the evolution of claims for loss of spousal consortium. Though parallel in many respects, the history of actions for interference with the parent-child relationship has taken distinct turns.

A father has traditionally had actions for abduction and seduction of his child.[3] Both causes were founded upon an analogy with a master's action for enticement of his servant.[4] In order to prevail, the father had to show actual loss of his

[2] See *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 154 (1973); Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L. Rev. 722, 724 (1976).

[3] The most recent abduction action to reach this court appears to be *Rice* v. *Nickerson*, 9 Allen 478 (1864). The most recent seduction action to reach this court appears to be *Thibault* v. *Lalumiere*, 318 Mass. 72 (1945) (female employee's action for seduction by employer).

[4] Prosser points out an even earlier basis for an abduction action: a writ "giving an action for the taking away of an heir, which apparently was based upon the pecuniary loss to the parent of the heir's marriage prospects, and so did not apply to any other children." W. Prosser, Torts, § 124 at 882 (4th ed. 1971). See *Barham* v. *Dennis*, 78 Eng. Rep. 1001 (C.P.1600).

child's services. W. Prosser, Torts § 124, at 882 (4th ed. 1971). With time, a doctrine of constructive loss of services developed. If the child was a minor and the father had a right to his or her services the child was presumed to be his servant. *Kennedy* v. *Shea,* 110 Mass. 147, 150 (1872). Thus, loss of services became a technical requirement, an acknowledged fiction. See, e.g., *Blagge* v. *Ilsley,* 127 Mass. 191, 199 (1879). Once the parent established that the defendant's act made the child mentally or physically incapable of rendering services, the court could award damages for emotional harm done the parent. *Id.* at 197-198. See *Cook* v. *Bartlett,* 179 Mass. 576, 579-580 (1901); *Stowe* v. *Heywood,* 7 Allen 118, 122 (1863). In abduction cases, the father could recover for loss of the child's society. *Stowe* v. *Heywood, supra* at 122-123. See *Worcester* v. *Marchant,* 14 Pick. 510 (1834); W. Prosser, *supra,* § 124, at 883; Restatement (Second) of Torts § 700, Comment g (1977). Such recovery appears also to have been available in seduction cases. *Stowe* v. *Heywood, supra* at 122. See W. Prosser, *supra,* § 124 at 885 & n.99; but see Restatement (Second) of Torts § 701, Comment e (1977).

In addition to the actions for abduction and seduction, our cases recognized a further consequence of the master-servant analogy. "The remedy, on principle, is equally clear whether the injury is produced by beating and wounding, by enticing away, or by seduction." *Blagge* v. *Ilsley, supra* at 198. See *Bradstreet* v. *Wallace,* 254 Mass. 509, 511 (1926). A third person's tortious infliction of injury upon a child gave the parent[5] a cause of action for loss of services.

---

[5] We find no Massachusetts cases in which a mother attempted to recover in a common law abduction or seduction action. Cf. *Worcester* v. *Marchant,* 14 Pick. 510 (1834) (widowed mother, since remarried, may not recover in statutory abduction action). However, at least after the enactment of the married women's acts, current version at G. L. c. 209, §§ 1-13, the father's death or desertion permitted the mother to sue for loss of services and consequential damages resulting from personal injury to her minor child. *King* v. *Viscoloid Co.,* 219 Mass. 420 (1914). *Tornroos* v. *R.H. White Co.,* 220 Mass. 336 (1915). *Horgan* v. *Pacific Mills,* 158 Mass. 402 (1893). In some jurisdictions, a mother could also recover for loss of services of an illegitimate son. W. Prosser, *supra,* § 125, at 891.

Even a negligent act would suffice. *Horgan* v. *Pacific Mills*, 158 Mass. 402 (1893). *Wilton* v. *Middlesex R.R.*, 125 Mass. 130 (1878). Moreover, the parent could recover for labor performed and expenses reasonably incurred in the child's care. *Dennis* v. *Clark*, 2 Cush. 347 (1848). As in actions for abduction and seduction, the requirement of actual loss of services withered, becoming a mere fiction. *Id.* See W. Prosser, *supra*, § 125 at 890. However, it does not appear that damages for the parent's mental suffering or for loss of the child's society were available when the gravamen of the parent's claim was physical injury to the child. See Restatement (Second) of Torts § 703, Comment h (1977). But see W. Prosser, *supra*, § 125, at 889-890, and cases cited in n.58. See also *Dennis* v. *Clark*, *supra*.[6]

These cases supply analogous precedent for a child's right to recover for loss of a parent's society resulting from the defendant's negligence. The common law has traditionally recognized a parent's interest in freedom from tortious conduct harming his relationship with his child. As in husband-wife relations, albeit to a more limited extent, our law has compensated parents for sentimental as well as economic injuries.[7] If the common law sometimes protects

[6] In *Dennis* v. *Clark*, 2 Cush. 347 (1848), the father sought consequential damages for expenses incurred in his son's care and for his own and his family's mental suffering. The trial judge nonsuited the plaintiff. This court reversed, sustaining the claim for expenses, but saying nothing about the claim for mental suffering. Apart from the *Dennis* decision, we find no early Massachusetts authority in which a parent even sought damages for sentimental harm resulting from injury to his child.

[7] At common law, a husband was entitled to damages for loss of his wife's consortium in actions for alienation of affections, criminal conversation, and intentional or negligent infliction of personal injury. *Diaz*, *supra* at 154-155. Before *Diaz*, a wife could recover for loss of the husband's consortium in actions for alienation of affections and criminal conversation, but not for injuries to the husband. *Id.* at 156. By contrast, a parent has been denied recovery for alienation of his child's affections. *Ronan* v. *Briggs*, 351 Mass. 700 (1966). And as our previous discussion indicates, a parent could receive damages for loss of his child's society in an action for abduction, and perhaps in an action for seduction. However, the parent could not recover such damages in an action involving intentional or negligent injury to the child. See, e.g., *Grant* v. *Crook*, 468 F.

a parent's sentiments in the parent-child relationship, we might expect similar protection for the fledgling needs of the child. But the common law has been nearly silent concerning a child's right to recover damages for loss of parental society. Perhaps because courts would not stand the master-servant analogy on its head, with the child as master,[8] the question of the child's action does not appear in our cases until 1931. *Cole* v. *Cole,* 277 Mass. 50 (1931). Furthermore, the question was not clearly presented until *Nelson* v. *Richwagen,* 326 Mass. 485 (1950). See *White* v. *Thomson,* 324 Mass. 140, 143 (1949).

In *Nelson,* a minor child sought relief against the defendant for enticing her mother to desert her and her father. The child prayed for damages for loss of support, maintenance and maternal care. This court affirmed an order sustaining a demurrer to the child's claim. The court acknowledged that one spouse has a right to the personal presence and care of the other. However, a minor child has no comparable right to the presence and care of a parent. "So far as the parent is bound to support the child the parent may be compelled to do so by other proceedings." *Nelson, supra* at 487. The court also raised four practical objections to the child's action: "(1) Possibility of a multiplicity of suits . . .; (2) Possibility of extortionary litigation . . .; (3) Inability to

---

Supp. 404 (D. Mass. 1979). But see, e.g., *Yordon* v. *Savage,* 279 So. 2d 844, 846 (Fla. 1973); *Shockley* v. *Prier,* 66 Wis. 2d 394 (1975). For compilations of cases and statutes upholding recovery, see *Baxter* v. *Superior Court,* 19 Cal. 3d 461, 464-465 n.1 (1977). Annot., 69 A.L.R.3d 553, 559-561 (1976). We need not consider today the scope of the parent's right.

[8] "We may observe that, in these relative injuries [i.e., injuries to the master-servant, husband-wife and parent-child relationships], notice is only taken of the wrong done to the superior of the parties related, by the breach and dissolution of either the relation itself, or at least the advantages accruing therefrom; while the loss of the inferior by such injuries is totally unregarded. One reason for which may be this: that the inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury." 3 W. Blackstone, Commentaries 142-143 (1768).

define the point at which the child's right would cease [i.e., the point at which the child becomes an adult]; (4) Inability of a jury adequately to cope with the question of damages" both because the damages are too speculative and because overlapping recovery is probable. The court then likened the policies involved to those underlying parent-child tort immunity. *Id.*

*Nelson* is the only Massachusetts case to discuss in any detail a child's right to recover damages for loss of parental society. Because it involves the disfavored action for alienation of affections, it is distinguishable from the present case. The court implied a distaste for tort litigation among family members. *Id.* at 487-488. Also, the court was concerned with the likelihood of extortionate litigation. However, when a third party's negligence causes injury to a parent and the child suffers loss of society, the litigation does not typically pit family members against each other. Cf. *Sorensen* v. *Sorensen,* 369 Mass. 350, 356, 363 (1975) (permitting parent-child litigation over automobile accidents will not unduly harm family). And the potential for extortionate litigation is absent. *Diaz, supra* at 160.

Although these distinctions may justify the *Nelson* result, the *Nelson* court's reasoning demands our attention. Reasons similar to those stated in *Nelson*, and a reluctance to act absent legislative sanction, have persuaded many courts to deny recovery in actions like the one before us.[9] For example, in *Borer* v. *American Airlines, Inc.*, 19 Cal. 3d 441, 453 (1977), the court held "that taking into account all considerations which bear on this question, including the inadequacy of monetary compensation to alleviate [a family] tragedy, the difficulty of measuring damages, and the danger of imposing extended and disproportionate liability, we

---

[9] See *Borer* v. *American Airlines, Inc.*, 19 Cal. 3d 441, 449-450 n.2 (1977), and cases cited. See generally Annot., 69 A.L.R.3d 528 (1976). See also *Hinde* v. *Butler*, 408 A.2d 668 (Conn. Super. 1979); *Hickman* v. *Parish of East Baton Rouge*, 314 So. 2d 486 (La. App. 1975); *Roth* v. *Bell*, 24 Wash. App. 92 (1979). Outside of Massachusetts, we count eighteen jurisdictions that currently deny recovery.

should not recognize a nonstatutory cause of action for loss óf parental consortium." But see *id.* at 453-560 (Mosk, J., dissenting). Despite the conceded natural justice of a child's claim[10] and extensive commentary favoring such actions,[11] only one jurisdiction presently permits recovery. *Berger* v. *Weber,* 82 Mich. App. 199 (1978). See *Scruggs* v. *Meredith,* 134 F. Supp. 868 (D. Haw. 1955), rev'd, 244 F.2d 604 (9th Cir. 1957), in light of *Halberg* v. *Young,* 41 Haw. 634 (1957) (Hawaii law). We believe that Michigan's approach is the correct one. Scrutiny of the reasons for denying recovery finds them unsound. Moreover, many of the objections to the child's claim raise anew the questions that we laid to rest in *Diaz.*

The principal reason in *Nelson* for rejecting the child's alienation of affections claim was that a child had no legal entitlement to his parent's society. That proposition is no longer true. In an action for wrongful death, the children of the deceased are persons entitled to receive the damages recovered, as defined in G. L. c. 229, § 1. As such, they are entitled to recover for "loss of the reasonably expected . . . society . . . of the decedent." G. L. c. 229, § 2, as appearing in St. 1973, c. 699, § 1. We think it entirely appropriate to protect the child's reasonable expectation of

---

[10] See, e.g., *Hill* v. *Sibley Memorial Hosp.,* 108 F. Supp. 739, 741 (D.D.C. 1952); *Borer* v. *American Airlines, Inc., supra* at 453; *Hankins* v. *Derby,* 211 N.W.2d 581, 582 (Iowa 1973); *Hoffman* v. *Dautel,* 189 Kan. 165, 168-169 (1962); *Russell* v. *Salem Transp. Co.,* 61 N.J. 502 (1972); *Duhan* v. *Milanowski,* 75 Misc. 2d 1078, 1084 (N.Y. 1973).

[11] "It is not easy to understand and appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence." W. Prosser, *supra,* § 125, 896-897. See Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship, 51 Ind. L. J. 590 (1976); Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L. Rev. 722 (1976); Comment, The Child's Claim Appeal, 13 San Diego L. Rev. 231 (1975). See also 8 S.C.L.Q. 477 (1956); 2 St. Louis U.L.J. 305 (1953); 6 Vand. L. Rev. 926 (1953). Contra: 42 Cornell L.Q. 115 (1956); 54 Mich. L. Rev. 1023 (1956).

parental society when the parent suffers negligent injury rather than death.  Cf. W. Prosser, *supra,* § 130, at 950-951 & n.68 (tortious interference with reasonably expected non-commercial benefit).  Protecting a child's need for parental love and nurture is the express legislative policy of this Commonwealth.  G. L. c. 119, § 1.  See *id.* § 24.  In the courts, "[c]hildren enjoy the same right to protection and to legal redress that others enjoy.  Only the strongest reasons, grounded in public policy, can justify limitation or abolition of those rights."  *Sorensen* v. *Sorensen,* 369 Mass. 350, 359 (1975).  Here such a countervailing policy is wanting.

The other objections in *Nelson* were the subject of discussion in *Diaz, supra.*  We dealt at length with such problems as possible multiplicity of suits, *id.* at 161-162; purported remoteness of the damages, *id.* at 159-160; and dangers of redundant recovery, *id.* at 162-163.  We need not rehearse those discussions here.  As for the argument that we should withhold our hand until the Legislature acts, we need only repeat: "In a field long left to the common law, change may well come about by the same medium of development.  Sensible reform can here be achieved without the articulation of detail or the creation of administrative mechanisms that customarily comes about by legislative enactment. . . .  In the end the Legislature may say that we have mistaken the present public understanding of the nature of the [parent-child] relation, but that we cannot now divine or anticipate."  *Id.* at 166-167.

We hold that the Ferriter children have a viable claim for loss of parental society if they can show that they are minors dependent on the parent, Michael Ferriter.  This dependence must be rooted not only in economic requirements, but also in filial needs for closeness, guidance, and nurture.  In so holding, we do not abandon our determination to "proceed from case to case with discerning caution" in this field.  *Diaz* v. *Eli Lilly & Co., supra* at 165.  As claims for injuries to other relationships come before us, we shall judge them according to their nature and their force.[12]

---

[12] For reasons similar to those expressed in *Diaz,* we declare that, where a spouse's claim for loss of consortium has been concluded by judgment or

Over sixty years ago, Dean Pound said, "As against the world at large a child has an interest . . . in the society and affection of the parent, at least while he remains in the household. But the law has done little to secure these interests. . . . It will have been observed that legal securing of the interests of children falls far short of what general considerations would appear to demand." Pound, Individual Interests in the Domestic Relations, 14 Mich. L. Rev. 177, 185-186 (1916). We meet part of that demand today.

2. We turn to the plaintiffs' claims for negligent infliction of mental distress and impaired health. The judge below allowed the defendant's motion for summary judgment on this issue. Relying on the plaintiffs' complaint and a statement of agreed facts, the judge concluded that "[t]he claims are barred by reason of the case of [*Dziokonski* v. *Babineau*, 375 Mass. 555 (1978)]."

The judge properly allowed the motion only if the pleadings and the statement of agreed facts "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970), quoting from *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962). The judge seems to have based his ruling exclusively on his understanding of the legal principles stated in *Dziokonski* v. *Babineau*, 375 Mass. 555 (1978).

In *Dziokonski* v. *Babineau*, *supra*, we held that "allegations concerning a parent who sustains substantial physical harm as a result of severe mental distress over some peril or harm to his minor child caused by the defendant's negli-

settlement or the running of limitations before this opinion is issued, no child's action for loss of parental society thereafter instituted and arising from the same incident will be allowed, even if that action would not otherwise be barred by limitations. See *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167 (1973).

gence state a claim for which relief might be granted, where the parent either witnesses the accident or soon comes on the scene while the child is still there." *Id.* at 568. The theory underlying that holding is that "reasonable foreseeability is a proper starting point in determining whether an actor is to be liable for the consequences of his negligence." *Id.* at 567. Furthermore, "[i]n cases of this character, there must be both a substantial physical injury and proof that the injury was caused by the defendant's negligence. Beyond this, the determination whether there should be liability for the injury sustained depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship between the claimant and the third person." *Id.* at 568.

We think that the present case is within the principles set out in *Dziokonski*. According to the complaint, the defendant's acts and the employee's injuries caused the plaintiffs to suffer physical impairment. The statement of agreed facts is silent concerning the plaintiffs' injuries. The allegation in the complaint, together with favorable inferences, suffices as a showing of substantial physical injury. Cf. *American Mut. Liab. Ins. Co.* v. *Commonwealth,* 379 Mass. 398, 400-401 (1979) (using "injury" and "impairment" interchangeably). Furthermore, Michael Ferriter is the plaintiffs' husband and father. According to the statement of agreed facts, the plaintiffs first saw his injuries in the hospital, not at the scene of the accident. However, on summary judgment, we may infer that the shock occurred immediately after the accident. A plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital. So long as the shock follows closely on the heels of the accident, the two types of injury are equally foreseeable. Thus, in all respects, the plaintiffs' claims fall within the principles of

proximity set out in *Dziokonski*. The motion for summary judgment should have been denied.[13]

3. The defendant's principal argument is that the Workmen's Compensation Act, G. L. c. 152, bars all of the plaintiffs' claims. Chief Justice Rugg described the act's purposes in *Ahmed's Case,* 278 Mass. 180, 183 (1932): "The underlying principle of that act is that the cost of injuries sustained by those employed in industry, save those due to serious and wilful misconduct of the employee, shall be treated as a part of the cost of production. In place of common law or statutory remedy for personal injury suffered by an employee based upon negligence, a system is established whereby compensation is paid for all injuries and for death arising out of and in the course of the employment, . . . without regard to the fault or freedom from fault of the employer or those for whom he is responsible, whether such injury or death is sustained because of unavoidable accident, negligence of fellow servants or of third persons, negligence of the employee or assumption of risk by him, or otherwise, excepting only injuries or death caused by the serious or wilful misconduct of the employee."

In its early forms, the act was elective for both the employer and the employee. St. 1911, c. 751, Parts II & IV (employers). St. 1911, c. 751, Part I, § 5 (employees). See *Young* v. *Duncan,* 218 Mass. 346, 349 (1914). The act created incentives to induce both the employer and employee to avail themselves of its benefits. For example, the employee escaped the difficulty of establishing the employer's negligence and negating common law defenses such as the fellow servant rule, assumption of the risk, and contrib-

---

[13] The plaintiffs' complaint contains allegations of wilful, wanton, and reckless infliction of mental distress. However, neither the statement of agreed facts nor the plaintiffs' brief contains anything to support the view that these are viable claims or claims that the plaintiffs press before us. We have not ruled on the validity of a claim for intentional infliction of mental distress through conduct directed at a third party. See *Agis* v. *Howard Johnson Co.,* 371 Mass. 140 (1976); *George* v. *Jordan Marsh Co.,* 359 Mass. 244, 253 (1971). Compare Restatement (Second) of Torts § 46 (1) (1965) with § 46 (2). We do not reach the issue today.

utory negligence. The employer, on the other hand, could avoid litigation and treat his payments as an actuarially-predictable cost of doing business.[14] A corollary of the latter point was that the employee accepting compensation had to give up his common law rights against the employer. St. 1911, c. 751, Part I, § 5, current version at G. L. c. 152, § 24. St. 1911, c. 751, Part V, § 1, current version at G. L. c. 152, § 23. See, e.g., *King* v. *Viscoloid Co.*, 219 Mass. 420, 422 (1914). However, an employee could give notice that he wished to preserve his common law rights and reject the compensation program. St. 1911, c. 751, Part I, § 5. Even after the act underwent substantial revision and participation became compulsory for most employers, St. 1943, c. 529, § 7, employees retained their right to reject compensation and preserve their common law remedies. St. 1943, c. 529, § 6, current version at G. L. c. 152, § 24.

In the present case, the employee not only failed to give notice that he wished to preserve his rights at common law, G. L. c. 152, § 24,[15] but he also accepted compensation payments, G. L. c. 152, § 23.[16] His waiver of rights is undisputed. However, we must decide whether his waiver bars his family from recovering against the employer at common law for damage suffered by them. We first addressed this question in *King* v. *Viscoloid Co., supra*, only

---

[14] See generally L. Locke, Workmen's Compensation § 24, at 24 (1968).

[15] General Laws c. 152, § 24, as amended through St. 1955, c. 174, § 5, provides in pertinent part: "An employee shall be held to have waived his right of action at common law . . . to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right, or, if the contract of hire was made before the employer became an insured person or self-insurer, if the employee shall not have given the said notice within thirty days of the time said employer became an insured person or a self-insurer."

[16] General Laws c. 152, § 23, as amended through St. 1953, c. 314, § 6, provides: "If an employee files any claim for, or accepts payment of, compensation on account of personal injury under this chapter, or makes any agreement, or submits to a hearing before a member of the division under section eight, such action shall constitute a release to the insured or self-insurer of all claims or demands at law, if any, arising from the injury."

three years after St. 1911, c. 751, inserted the Workmen's Compensation Act.

In *King,* a mother sued her son's employer for loss of the son's services and for expenses incurred in nursing and caring for him. The workmen's compensation insurer had made various payments to the son. This court upheld the mother's claim. Her right of action "was not in any just sense consequential upon that of the son." *Id.* at 422. She sought redress for her own injury, not his. Furthermore, her action was distinct from the action that the son had waived under St. 1911, c. 751, Part I, § 5, the progenitor of G. L. c. 152, § 24. "[H]e had waived his right of action; but he had not waived, by his own mere act he could not waive, his parent's independent right." *King, supra* at 422.

The court relied on the principle "that an existing common law remedy is not to be taken away by a statute unless by direct enactment or necessary implication." *Id.* at 425. The language of St. 1911, c. 751, Part I, § 5, seemed expressly to limit the waiver to the employee: "An employee of a subscriber shall be held to have waived *his* right of action at common law to recover damages for personal injuries . . ." (emphasis supplied). The court said, "The Legislature have stated the consequence that is to follow the failure to give the statutory notice; how can the court say that further consequences shall follow, by taking away the right of a third person not mentioned in the act?" *King, supra* at 423.

Moreover, nothing in the statute took away by implication the mother's remedy at common law. Even though the insurer paid the son's medical and hospital bills, the mother could recover for her own injuries. She had received no compensation payments herself, and the court remarked, "Our decision does not apply to cases where the parent has received any benefit or compensation under the act." *Id.* Because the parties had stipulated to the amount of damages at issue, the court did not have to consider possible set-offs resulting from the insurer's compensation payments to the son. Thus, the Workmen's Compensation Act neither expressly nor impliedly barred the mother's remedy.

Neither the rule of *King* v. *Viscoloid Co., supra,* nor the pertinent language of the statute has been modified since 1914. Indeed, in years that followed, this court has repeatedly reaffirmed the *King* rule. In *Erickson* v. *Buckley,* 230 Mass. 467, 471 (1918), we said in dicta: "Under the . . . workmen's compensation act . . . the common law right of a third person to recover for injuries sustained by him as a consequence of harm and injury coming upon [an employee] through the negligence of the defendant, is not barred by the neglect or refusal of [the employee] to give notices which are conditions precedent to any right of recovery by that [employee], by a release or by a refusal to prosecute, for the reason that the rights of third persons are not included in the terms of the act."

In *Slavinsky* v. *National Bottling Torah Co.,* 267 Mass. 319 (1929), a mother sued her minor son's employer in tort for expenses incurred in her son's care and treatment. The employee also brought an action of tort against the employer for personal injuries. We held that, under the *King* rule, the Workmen's Compensation Act barred the employee's claim, but did not bar the mother's claim. Nevertheless, since the mother's claim was based solely on the alleged negligence of a fellow employee, we held the employer could invoke the fellow servant rule as a defense. Hence, despite the favorable *King* precedent, the mother could not recover. Cf. G. L. c. 153, § 1 (fellow servant rule may not apply in certain employee actions against employer).

Finally, in *Zarba* v. *Lane,* 322 Mass. 132 (1947), we applied the *King* rule even after workmen's compensation had become compulsory for most employers. A minor brought a tort action against his employer, who was not a subscriber under the Workmen's Compensation Act, for personal injuries inflicted by a fellow employee. The boy's father brought a count seeking consequential damages. The plaintiffs sought the benefit of G. L. c. 152, § 66, which abolished a nonsubscribing employer's common law defenses, including the fellow servant rule, in actions by employees injured in the course of employment. We held that the em-

ployer was not entitled to a directed verdict that the son's injury occurred outside of his employment. Therefore, the son did not, as a matter of law, fall outside of the statute's protection. However, under the *King* rule, the father's right of action was independent of the son's. As in *Slavinsky,* the fellow servant rule defeated the parent's claim.

The line of authority from *King* to *Zarba* spans thirty-three years and extends beyond the 1943 revision of the Workmen's Compensation Act. The cases rest on the principle that employees have always had an election to participate in the workmen's compensation system. Yet the plaintiffs in cases like *King* were not "employees" under the act. See *White* v. *George A. Fuller Co.,* 226 Mass. 1, 4-5 (1917). They did not choose to waive their common law rights to redress of personal injuries. Nor did they receive compensation payments for their injuries.[17] In light of the limited language of G. L. c. 152, § 24, it would be unfair to hold that the employee waived a third party's right as well as his own. See *Pinnick* v. *Cleary,* 360 Mass. 1, 21-22 (1971); *Clark* v. *M.W. Leahy Co.,* 300 Mass. 565, 569 (1938). The Legislature has created various incentives to induce an employer to comply with the act. However, avoiding the threat of nonemployee actions under the *King* rule is not part of the employer's incentive for complying with the act.[18]

---

[17] The principle that the compensation act should not bar a person from asserting rights at law unless he waived his rights also appears in *Reidy* v. *Old Colony Gas Co.,* 315 Mass. 631 (1944). In that death action, only some of the dead employee's beneficiaries were receiving compensation. The court held that the nondependent children had not had an election under G. L. c. 152, § 15, as appearing in St. 1929, c. 326, § 1. Therefore, their rights could not be subordinated to those of the insurer.

[18] General Laws c. 152, § 66, abolishes an employer's common law defenses in employee suits for injuries sustained in the course of employment. "The purpose . . . is to place the employee of an employer who is not a subscriber under the workmen's compensation act as nearly as possible in the same position as is the employee of an employer who is a subscriber." *Zarba* v. *Lane,* 322 Mass. 132, 134 (1947). See *Barrett* v. *Transformer Serv., Inc.,* 374 Mass. 704 (1978). Only employers participating in the compensation system are entitled to raise such defenses as the fellow servant rule. G. L. c. 152, § 67. However, in *Zarba,* the court

The defendant O'Connell raises several arguments to attack application of the *King* rule in this case. First, O'Connell characterizes G. L. c. 152, § 24, as an isolated statutory provision which must be read in the broad context of the purposes of the act. As O'Connell would have it, permitting third party actions of this nature will render uncertain an employer's costs for employee injuries. Moreover, the employer will have to litigate the issue of fault. According to O'Connell, workmen's compensation was designed to relieve the employer of these burdens. *Smither & Co.* v. *Coles*, 242 F.2d 220, 222 (D.C. Cir.), cert. denied, 354 U.S. 914 (1957).

We recognized in *King* v. *Viscoloid Co., supra* at 422, that the employee's remedy should be exclusive, and we do not question that proposition today. "But we find in the act nothing which goes further than this for the protection of the employer." *Id.* In Massachusetts, employers within the compensation act have never been in a position to rely on determinate liability for derivative third party injuries.[19] And fault has never been purged entirely from the statutory scheme. This is the legacy of the *King* decision and our unusual statute, G. L. c. 152, § 24, whose language unambiguously limits the scope of the employee's waiver.[20] Despite

permitted even a nonsubscribing employer to raise the fellow servant defense against a nonemployee plaintiff.

[19] In addition, application of the *King* rule will not result in wholly indeterminate liability for employers. Although actual liability may be harder to predict than costs under the Workmen's Compensation Act, employer losses will probably be capable of actuarial prediction, and insurance will probably be available.

[20] Even if that language were ambiguous, the legislative history of G. L. c. 152, § 24, would support a strict interpretation of the phrase, "[a]n employee . . . shall be held to have waived his right of action at common law. . . ." St. 1911, c. 751, Pt. I, § 5. In 1911, the Governor's Commission on Compensation for Industrial Accidents submitted three different drafts of a workmen's compensation act. 1911 House Doc. No. 1925. One of those drafts contained the language eventually enacted. The other two, however, contained a much broader exclusivity provision: "The right to compensation and the remedy therefor herein granted shall be in lieu of all rights and remedies now existing either at common law or under

numerous legislative reports on workmen's compensation,[21] a revision of the participation requirement of the act,[22] and many amendments of the section in question,[23] that strict language remains. Few exclusive liability provisions in workmen's compensation statutes are so narrowly drawn.[24] 2A A. Larson, Workmen's Compensation §§ 66.00-66.20 (1976 & Supp. 1980). In the construction of statutes resembling ours, *King* v. *Viscoloid Co., supra,* is the acknowledged leading case. 2A A. Larson, *supra* § 66.20, at 12-24.[25] Without a declaration of legislative intent to the

[certain statutes], and such rights and remedies shall not accrue to employees entitled to compensation under this act while it is in effect." Our Legislature chose the narrow version.

[21] 1911 House Doc. No. 300; 1912 House Doc. No. 346. Report of the Massachusetts Commission on Compensation for Industrial Accidents (July 1, 1912) (unnumbered). 1917 Senate Doc. No. 370. 1927 House Doc. No. 999. 1947 House Doc. No. 1803. 1948 Senate Doc. No. 427. 1949 Senate Doc. No. 580. 1954 Senate Doc. No. 760.

[22] St. 1943, c. 529.

[23] St. 1912, c. 666, § 2. St. 1927, c. 309, § 2. St. 1943, c. 529, § 6. St. 1955, c. 174, § 5.

[24] For example, the defendant looks to *Smither & Co.* v. *Coles,* 242 F.2d 220, 222 (D.C. Cir.), cert. denied, 354 U.S. 914 (1957), which we cited in *Diaz* v. *Eli Lilly & Co.,* 364 Mass. 153, 165 n.42 (1973). In *Smither* the court held that the District of Columbia workmen's compensation statute bars a wife's action for loss of consortium of her employee husband. The court construed D.C. Code 1951, § 36-501, which adopted the Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. §§ 901 et seq. (1976). Section 5 of that act, 33 U.S.C. § 905, inserted by March 4, 1927, c. 509, § 5, 44 Stat. 1426, then provided: "The liability of an employer . . . shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer . . . on account of such injury or death." This statute expressly bars a wife's action arising from the injury of her employee husband. The dramatic difference in language between the District of Columbia statute and G. L. c. 152, § 24, explains why the *Smither* court did not follow the *King* rule. It also indicates that *Smither* has limited persuasive value for our decision today.

[25] *Allen* v. *Trester,* 112 Neb. 515 (1924). *LaBonte* v. *National Gypsum Co.,* 110 N.H. 314 (1970). *Roxana Petroleum Co.* v. *Cope,* 132 Okla. 152 (1928). *Silurian Oil Co.* v. *White,* 252 S.W. 569 (Tex. Civ. App. 1923). New Hampshire and Texas have since amended their statutes to forbid ac-

contrary, we are disinclined to disturb our rule, which has weathered sixty-six years unscathed.[26]

The defendant's second attack seems to rest on the suggestion that the Legislature has tacitly overruled *King.* When *King* was decided, the act did not provide for payment of dependency benefits to the parent of an injured, unmarried, minor employee. In St. 1926, c. 190, current version at G. L. c. 152, § 32 (*e*), the Legislature created a conclusive presumption of dependency for a parent of an unmarried minor employee living with the parent at the time of an injury resulting in death. In *Pierce's Case,* 267 Mass. 208, 211 (1929), the court remarked that workmen's compensation benefits were the sole remedy for a parent of an unmarried minor employee whose injuries resulted in death. Statute 1945, c. 717, inserted G. L. c. 152, § 35A, which provided for dependency benefits for injured employees and incorporated the presumption of dependency for parents of an

---

tions for loss of consortium and loss of services. See *O'Keefe* v. *Associated Grocers of New England, Inc.,* 117 N.H. 132 (1977); *Martin* v. *Southland Corp.,* 463 S.W.2d 471 (Tex. Civ. App. 1971). See also *Garrett* v. *Reno Oil Co.,* 271 S.W.2d 764 (Tex. Civ. App. 1954).

The employer points to *Danek* v. *Hommer,* 14 N.J. Super. 607 (1951), aff'd 9 N.J. 56 (1952), as a decision arising under a statute similar to ours, but reaching a result opposite to that which we reach today. The court held that N.J. Stat. Ann. § 34:15-8 (West) barred a husband's action for loss of consortium. Assuming that it is fair to characterize this provision as similar to G. L. c. 152, § 24, *Danek* is still distinguishable from the present case. New Jersey had long before relied on a peculiarity of its statute as grounds for rejecting the *King* rule. *Buonfiglio* v. *R. Neumann & Co.,* 93 N.J.L. 174 (1919). Unlike the situation we face today, the *Danek* court did not face a well-established body of precedent favoring third-party actions for loss of services or consortium.

[26] We are mindful that legislative inaction following a judicial interpretation of a statute provides frail evidence that the Legislature approves of the court's interpretation. We do not know whether the Legislature has been aware of the rule of *King* v. *Viscoloid Co.* during the years since 1914. However, relatively frequent legislative attention to the workmen's compensation statute and to § 24, the unusual language of § 24, and the prominence of *King* in scholarly commentary provide some evidence of legislative approval. 2A C. Sands, Sutherland Statutory Construction § 49.10, at 261-262 (4th ed. 1973).

unmarried, minor child. According to O'Connell, this history implies that the mother in *King* could no longer recover for loss of her son's services.

This argument rests on several mistakes. The defendant looks to *Pierce's Case, supra,* for authority that workmen's compensation is the sole remedy for a deceased employee's dependents. In fact, the original basis for that proposition is *McDonnell* v. *Berkshire St. Ry.,* 243 Mass. 94 (1922). The *King* case was expressly stated to be of "no pertinency to the facts here disclosed." *Id.* at 96. Moreover, G. L. c. 152, § 68, inserted by St. 1911, c. 751, Part I, § 4, states that the wrongful death statute, G. L. c. 229, § 2B, does not apply to employees of employers covered by the provisions of G. L. c. 152. According to G. L. c. 152, § 1 (4), dependents of a deceased employee are "employees" under the compensation act. Thus, G. L. c. 152, § 68, deprives them of a remedy against such employers under the wrongful death act. As the *McDonnell* court recognized, the *King* rule has no application in this context. The court in *King* said its rule would not apply when the Legislature expressly withdrew such rights. See *King, supra* at 425.

Unlike recipients of death benefits, who receive direct payments, the mother in *King* would not receive direct payments herself as a matter of right. Also, she would not have had a chance to give notice to preserve her common law rights under § 24. It follows that the status of the mother's right of action in *King* would be unsettled at best under the present Workmen's Compensation Act. We find nothing in G. L. c. 152, § 35A,[27]

---

[27] The defendant seems to argue that the Ferriter dependents' eligibility for dependency benefits bars the plaintiffs' actions. Nevertheless, in support of this argument, the defendant points to no section of the statute other than § 35A. That section says nothing about limiting common law rights.

The defendant also points out that Michael Ferriter receives no dependency benefits because his compensation payments, apart from dependency benefits, exceed the statutory limit. G. L. c. 152, § 35A. The defendant argues that the Ferriter dependents should be treated no

indicating that the Legislature intended to overrule *King*.[28]

The employer next argues that application of the *King* rule in the present case would create an anomaly. According to O'Connell, dependents of injured employees could recover for loss of consortium, but dependents of deceased employees could not.

We acknowledge that G. L. c. 152, §§ 1 (4) and 68, bar a deceased employee's dependents from recovering under G. L. c. 229, §§ 2 and 2B, for loss of consortium, as against an employer covered by G. L. c. 152. Furthermore, we recognize that the dependents of a deceased employee generally suffer more severe loss of consortium than dependents of an employee who is merely injured. Nevertheless, we point out that dependents entitled to death benefits enjoy all of the advantages available to any injured employee under the act. Although dependents of an injured employee

---

differently from dependents of employees who actually receive benefits. According to the defendant, mere eligibility is sufficient.

We agree with the defendant that it is irrelevant whether Michael Ferriter actually receives benefits under § 35A. However, even if he were receiving such benefits, G. L. c. 152 would not bar the actions before us. General Laws c. 152, § 23, applies only to an employee who accepts compensation payments. The Ferriter wife and children are not employees. Thus, an employee's receipt of benefits under § 35A would not bar the claims of a spouse or child for loss of the employee's consortium or society.

[28] The defendant seeks support from *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524 (1978). In that case, an insurer standing in an employee's shoes sued a third party under G. L. c. 152, § 15. The defendant there sought to implead the employer for contribution. We held that the defendant would not be entitled to contribution even if the employer had been negligent. O'Connell sees the *Westerlind* decision as evidence that "it is difficult to conceive of any party with common-law or statutory rights deriving from an injury to an employee which do not come within . . . the Workmen's Compensation Act."

*Westerlind,* however, depended upon construction of the Massachusetts contribution statute, G. L. c. 231B, § 1 (*a*), which requires that the potential contributor be "directly liable to the plaintiff." *Westerlind, supra* at 526. Because the employee had accepted compensation payments, G. L. c. 152, § 23, absolved the employer of liability to the employee. Therefore, the employer could not be liable for contribution. The court did not articulate a broad principle that any third party action against an employer falls unless the employee himself could have recovered against the employer. *Westerlind* merely construed a statute not applicable to the case before us.

seeking damages for loss of consortium may have a chance for a large award, they must litigate the issue of fault and prevail against common law defenses. There is no certainty they will recover. It would not be unreasonable for the Legislature to have granted the more certain remedy of workmen's compensation to families of deceased employees. Furthermore, the two classes of dependents have never been treated with perfect parity. As O'Connell implicitly admits, death benefits paid to dependents have been available since 1911, St. 1911, c. 751, yet dependency benefits to injured employees did not become available until 1945. St. 1945, c. 717. Thus, the Legislature may have chosen to continue the historical pattern of different treatment for the two classes.

Rejecting the defendant's arguments,[29] we conclude that the rule of *King* v. *Viscoloid Co., supra,* governs the present

---

[29] The employer makes one final attack upon application of the *King* rule. O'Connell argues that the plaintiffs' actions are derivative; i.e., they stand or fall with Michael Ferriter's claim. According to O'Connell, because the Workmen's Compensation Act bars Michael Ferriter's claims for personal injuries, the plaintiffs' actions must fall. In support of this analysis, the employer points to our "recognition" in *Diaz* of the derivative character of a wife's loss of consortium claim: "The consortium claim . . . has been treated as so far derivative . . . that contributory negligence of the spouse who suffered the physical injuries is held to bar the plaintiff's claim . . . ." *Diaz, supra* at 157 n.14. The employer also cites *Thibeault* v. *Poole,* 283 Mass. 480, 486 (1933). There we said that a husband could not recover consequential damages resulting from an injury to his wife if his wife had been contributorily negligent.

This argument is misconceived. The label "derivative" tells little about the state of affairs it purports to describe. Our remark in *Diaz,* placed in context, points out that in some jurisdictions the contributory negligence of an injured spouse bars the other spouse's loss of consortium claim. We also noted that the injured spouse's negligence has been held to reduce recovery in a comparative negligence State. *Diaz, supra,* n.14 at 157. The issue is open in Massachusetts. We cited *Thibeault* v. *Poole, supra,* to show that this court has applied a similar principle in the analogous context of a husband's action for consequential damages.

To answer the defendant's argument, we need only point to *King* v. *Viscoloid Co.* and its progeny. In actions for loss of services or consequential damages, we have consistently treated the employer's workmen's compensation defense differently from the defense that the employee was contributorily negligent.

case. The Workmen's Compensation Act does not bar the plaintiffs' claims for loss of consortium and society.[30]

4. The plaintiffs' claims for negligent infliction of mental distress stand on the same footing as the claims for loss of consortium and society. We find no Massachusetts cases in which members of an employee's family sought damages from a subscribing employer for emotional harm caused by injury to the employee in the course of employment. The defendant cites no authority from any court holding that a workmen's compensation statute bars actions of that type. Cf. *Diebler* v. *American Radiator & Standard Sanitary Corp.*, 196 Misc. 618 (N.Y. Sup. Ct. 1949); *Price* v. *Yellow Pine Paper Mill Co.*, 240 S.W. 588 (Tex. Civ. App. 1922) (family member can recover for physical and emotional harm caused by employer's independent act following injury to employee). See also *Foley* v. *Polaroid Corp.*, *post* 545 (1980) (barring employee action for intentional infliction of mental distress). We conclude that the King rule applies to the plaintiffs' claims for negligent infliction of mental distress, and those claims are not barred.

5. The judge's ruling denying the motion for summary judgment on the claims for loss of consortium and society (par. I, [5], of his report) is affirmed. His ruling allowing the motion for summary judgment on the claims for mental anguish and impaired health (par. I, [6], of his report) is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

QUIRICO, J. (concurring in part and dissenting in part).

1. I concur with the general conclusion reached in part 1 of the court's opinion that, as a general principle of the law

---

[30] The statement of agreed facts suggests that further proceedings in this case may necessitate determination whether the fellow servant rule is still vital in this Commonwealth. See, e.g., *Zarba* v. *Lane, supra*. As neither party has briefed that issue, we do not decide it.

of torts, one who by his tortious conduct causes personal injury to another should be liable in damages to the minor dependent children of the victim for the resulting interference with the parental relationship existing between the victim and the minor children. However, I have reservations about the application of that general principle of law to an injury which is within the coverage of the Workmen's Compensation Act, G. L. c. 152. These reservations will be discussed later in this opinion.

2. I dissent from that holding of the court in part 2 of its opinion which recognizes a right of the wife and minor children of Michael Ferriter, who were not present when he was injured, to recover for the mental distress and for physical injuries resulting from such distress which the wife and children suffered when they learned of the injury to Michael Ferriter and saw him in his injured condition. The court bases its holding on its prior decision in *Dziokonski* v. *Babineau*, 375 Mass. 555 (1978), from which I also dissented. The reasons for my present dissent are the same which I stated in my dissent in the *Dziokonski* case, at 569, viz., that I believe that recovery of damages for mental distress and resulting physical injury suffered by close relatives of an injured person should be limited to those relatives who were present, although not necessarily in the "zone of danger," at the time of the alleged tortious conduct which caused the original physical injury out of which the claims for mental distress arise. See *Dillon* v. *Legg*, 68 Cal. 2d 728 (1968).

Here again, I have reservations about the application of the principles of law allowing recovery for mental distress and resulting physical injuries suffered by close relatives of an injured person, to relatives of a person who sustains an injury which is within the coverage of the Workmen's Compensation Act, G. L. c. 152. These reservations will be discussed later in this opinion.

3. In part 3 of its opinion the court considers the question whether the Workmen's Compensation Act, G. L. c. 152, bars recovery by the wife and dependent minor children of Michael Ferriter on claims for (a) their loss of consortium or

familial relationship, and (b) their mental distress and resulting physical injuries, if any. After considerable discussion the court concludes that it does not bar recovery on either of such claims. I respectfully disagree and dissent from that conclusion for the reasons stated below.

The answer to the question before us depends almost entirely on the intent and purpose of the Legislature in enacting the Workmen's Compensation Act, which originated with St. 1911, c. 751, and in enacting the various amendments thereto as the Act developed to its present state in G. L. c. 152. In *Young* v. *Duncan*, 218 Mass. 346, 349 (1914), this court said: "The purpose of this act . . . was to substitute a method of accident insurance in place of the common law rights and liabilities for substantially all employees. . . . It was a humanitarian measure enacted in response to a strong public sentiment that the remedies afforded by actions of tort at common law and under the employers' liability act had failed to accomplish that measure of protection against injuries and of relief in case of accident which it was believed should be afforded to the workman. It was not made compulsory in its application, but inducements were held out to facilitate its voluntary acceptance by both employers and employees. It is manifest from the tenor of the whole act that its general adoption and use throughout the Commonwealth by all who may embrace its privileges is the legislative desire and aim in enacting it. The act is to be interpreted in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design."

In *King* v. *Viscoloid Co.*, 219 Mass. 420, 422 (1914), there is this further statement of the legislative intent: "It was undoubtedly the intention of the Legislature by that statute to take away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the act."[1]

---

[1] This is the same case upon which the court relies in the present case for the proposition that an employee who has waived his right of action at

The same statement appears in *Zygmuntowicz* v. *American Steel & Wire Co.*, 240 Mass. 421, 424 (1922).

The intent and purpose for which the Workmen's Compensation Act was enacted by the Legislature becomes obvious upon a study of social, economic, industrial, legal, and judicial conditions as they developed during the latter part of the Nineteenth and early part of the Twentieth Centuries. These conditions are described and documented in numerous publications, including the reports of a number of committees appointed by the Massachusetts General Court to study the subject and to make recommendations for legislation concerning compensation of injured employees.

The first such committee was established by Res. 1903, c. 87, and it was labeled the "Committee on Relations Between Employer and Employee." The committee's report, dated January 13, 1904, included in part V, at 36-56, a review of the law on employers' liability for injuries to employees, with particular emphasis on the volume of such cases in the courts and the dissatisfaction by the parties on both sides of such cases,[2] and it concluded by recommend-

---

common law by failing to give his employer written notice that he claims such right when he is hired does not by such waiver affect the rights of other persons. See G. L. c. 152, § 24.

[2] The following are excerpts from the committee's report: "The number of personal injury cases of all kinds in the community is very large, and is constantly increasing with the growth of population, the extension of industry and the development of means of transportation. The volume of litigation in this class of cases, not to mention those which are compromised before suits are instituted, is sufficiently large to engage almost the entire time of many sessions of courts and to demand from [time] to time the appointment of new judges, with accompanying increase in court expenses. A much greater proportion of personal injury cases than ever before, in comparison with other cases, occupies the attention of trial courts. These cases, good and bad, encumber the court dockets and in various ways delay the progress of justice. It has been estimated that, of this large volume of personal injury cases, those particularly relating to employees constitute from one-eighth to one-seventh." *Id.* at 37-38.

There then followed a reference to improper conduct by lawyers and other persons on both sides of such litigation. The report then continued as follows: "At all events, there is a great waste of money, so far as justice and the rights of both employers and employees are concerned. The real beneficiaries frequently are not parties to the litigation, and oftentimes

ing new legislation along the lines of the later Workmen's Compensation Act. See 14 Yale L.J. 18 (1904). The legislation proposed in that report failed to pass the Legislature. Despite that failure, efforts to pass a comprehensive law for the compensation of employees injured in the course of their employment continued until the passage of St. 1911, c. 751. These efforts are described in detail in a document entitled "Report of the Massachusetts Commission on Compensation for Industrial Accidents" filed with the Legislature on July 1, 1912. This is a comprehensive report tracing the movement for legislation on this subject from 1887 through the passage of St. 1911, c. 751, and beyond that point to July 1, 1912.

Although most of the references in judicial opinions and other writings to the rights and benefits created by, or resulting from the Workmen's Compensation Act refer to rights and benefits enjoyed by employees, there are corresponding rights and benefits enjoyed by employers under the Act. Among the rights and benefits enjoyed by an employer insured under the Act is immunity against suits for damages for injuries to employees "arising out of and in the course of [their] employment." G. L. c. 152, § 26, as amended through St. 1973, c. 855, § 1.

The original Workmen's Compensation Act, as enacted by St. 1911, c. 751, included the following provision in Part V, § 1: "If an employee of a subscriber [insured employer] files any claim with or accepts any payment from the association [insurer] on account of personal injury, or makes any agreement, or submits any question to arbitration, under this act, *such action shall constitute a release to the subscriber [insured employer] of all claims or demands at law, if any, arising from such injury*" (emphasis supplied). A

---

their selfish interests are served by defeating justice or by the promotion of injustice. It is no part of the duty of this committee, nor is it our intention, to censure the conduct of any persons for this condition of things, which indeed may be the result of forces and influences beyond the control of individuals. It would seem, however, to be for the true interest of the community, as well as for the interest of the employer and the injured employee, that some adequate remedy or remedies should be devised to correct these evils." *Id.* at 39.

similar provision has continued to be a part of the Act to this date, and G. L. c. 152, § 23, now provides: "If an employee files any claim for, or accepts payment of, compensation on account of personal injury under this chapter, or makes any agreement, or submits to a hearing before a member of the division under section eight, *such action shall constitute a release to the insured or self-insurer of all claims or demands at law, if any, arising from the injury"* (emphasis supplied). This section was last amended in 1953. St. 1953, c. 314, § 6.

The original Act also contained the following provision in Part I, § 5: "An employee of a subscriber [insured employer] shall be held to have waived his right of action at common law to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, notice in writing that he claimed such right . . . ." A similar provision has continued to be a part of the Act at all times, and it now appears in G. L. c. 152, § 24, in almost the same language, the last amendment thereto having been made in 1955. St. 1955, c. 174, § 5.

It is clear that the Workmen's Compensation Act gives an insured employer immunity against "all claims or demands at law, if any, arising from the injury," if such claims or demands are brought by the injured employee himself, or by his administrator or executor for damages for his death resulting from such an injury. The problem in this case arises from the fact that the "claims or demands," although arising out of the injury to an employee of an insured employer, are not being brought by the employee for his injury, but they are brought by his wife and children for loss of consortium and for emotional distress.

In holding that the claims of the plaintiffs are not barred by the Workmen's Compensation Act, the court relies principally on the reasoning of the decision of this court in *King* v. *Viscoloid Co.*, 219 Mass. 420 (1914). That case held that the acceptance of workmen's compensation benefits by a sixteen year old injured employee did not bar a claim by his mother against the employer "to recover for medical and

other expenses incurred by the [mother] in nursing and caring for her son and for the loss of his services during a certain period of time." *Id.* at 421. The reasoning of the court in the *King* case was that the Legislature intended, by enacting the Workmen's Compensation Act, "to take away from employees who should become subject to its provisions all other remedies that they had against their employers for injuries happening in the course of their employment and arising therefrom, and to substitute for such remedies the wider right of compensation given by the act." *Id.* at 422. The court then stated that the common law right of a parent to recover for expenses and loss of services for wrongful injury to a minor child, was a right separate and distinct from that of the child and held that the child's waiver of common law rights in the case before it did not take away the rights of the parent. *Id.* at 422-424.

The court, in the *King* decision, said that "[i]n our statute there is no direct enactment taking away the parent's right of action, and we find nothing which takes it away by necessary implication. The Legislature simply have not covered the case. . . . If they had chosen not to leave the parent's right of action unaffected, they might have taken it away altogether; they might have made some stated division of the alleged compensation between the minor employee and his parent. . . . But we have no right to conjecture what the Legislature would have enacted if they had foreseen the occurrence of a case like this; much less read into the statute a provision which the Legislature did not see fit to put there, whether the omission came from inadvertence or of set purpose." *Id.* at 424-425.[3]

---

[3] It is interesting to note that although the decision in the *King* case has been cited, and statements have been quoted therefrom with seeming approval in a number of later decisions by this court, there appears to be no opinion in which it has been applied to permit a relative of an employee who has received workmen's compensation benefits to recover for loss of consortium, interference with familial relationship, mental distress, or even to permit a parent of a minor injured employee of a subscribing employer to recover for the loss of a minor's services or to recover for medical expenses incurred for him. The following are some of the cases which

It is clear from the language of the *King* decision that the court did not want to read the then new Workmen's Compensation Act as meaning that by the child's acceptance of benefits thereunder the parent lost the right then recognized by the common law to recover damages in such a case. That is not the situation in the present case. The rights which the plaintiffs seek to enforce in this case did not exist under the common law when the Workmen's Compensation Act was first enacted, nor did they exist for many years thereafter. The right to recover for mental distress, absent prior physical injury, was first recognized in our decision of *George* v. *Jordan Marsh Co.*, 359 Mass. 244 (1971), and was developed further in *Agis* v. *Howard Johnson Co.*, 371 Mass. 140 (1976), and *Dziokonski* v. *Babineau*, 375 Mass. 555 (1978). The right to recover for loss of consortium was first introduced into the law of this Commonwealth by the Legislature in 1973 when it amended our death statute, G. L. c. 229, § 2, by defining one of the elements of damages recoverable to be "(1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, *including but not limited to compensation for the loss of the reasonably expected* net income, *services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered*" (emphasis supplied). St. 1973, c. 699, § 1, approved August 27, 1973. The Legislature did not then or at any other time provide for recovery for loss of consortium by spouses of victims of injuries in employment. Recovery for the loss of consortium was later made a part of our common law of torts by our decision in *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153 (1973), decided on October 10, 1973.

In my opinion it is one thing for the court to hold, as it did in *King* v. *Viscoloid Co.*, *supra*, that in enacting the Work-

---

seem to approve the holding in the *King* case, but which do not involve the same fact situation or legal issue: *Erickson* v. *Buckley*, 230 Mass. 467 (1918), *Gilbert* v. *Wire Goods Co.*, 233 Mass. 570 (1919), *Slavinsky* v. *National Bottling Torah Co.*, 267 Mass. 319 (1929), and *Zarba* v. *Lane*, 322 Mass. 132 (1947).

men's Compensation Act in 1911 the Legislature did not intend to take away the common law right of parents of a minor child to recover damages resulting from the child's injury in employment, but it is quite a different thing for the court to hold as it does in its present opinion that notwithstanding the fact that the Workmen's Compensation Act has been in effect for almost seventy years, during all of which insured employers have been immune from claims such as those pressed by the present plaintiffs, this court can now subject employers to liability for such claims. In the *King* decision this court held, in effect, that the Legislature, when it first enacted the Workmen's Compensation Act, knew that parents of minor children injured through the tortious conduct of their employers were entitled to recover damages such as those involved in *King,* and yet used no language in the new statute to affect the rights of persons other than the injured employee. On the other hand, in the present case, this court, without any substantive amendments to the Workmen's Compensation Act, imposes upon employers who are insured under the Act, new and additional obligations based on causes of action which did not become a part of the tort law of this Commonwealth until 1971 as to mental distress, 1973 as to spouses' right of consortium, and the date of the present opinion as to the familial rights of minor dependent children.

There is nothing in the language of the Workmen's Compensation Act or in its legislative history to indicate that the Legislature ever foresaw that many years later this court would by judicial decisions expand the scope of the law of torts to permit recovery by a spouse for wrongful interference with a right of consortium, by a child for wrongful interference with his familial rights, or by various persons for mental distress resulting in personal injuries. In these circumstances it seems appropriate to apply the same reasoning which was used in the *King* case, viz.: "The Legislature simply have not covered the case. . . . But we have no right to conjecture what the Legislature would have enacted if they had foreseen the occurrence of a case like this. . . ." *King* v. *Viscoloid Co., supra* at 424-425.

By the same reasoning as that applied to the Legislature, it can be said that there is nothing in our decisions in the *George, Agis, Dziokonski,* or *Diaz* cases, all *supra,* to indicate that we foresaw, or intended that the principles stated there were to apply to cases stemming from injuries covered under the Workmen's Compensation Act. In my opinion we start with a clean slate as to the applicability of the rules of those cases to cases stemming from injuries under the Act. The expansion of our common law of torts such as that accomplished by the four decisions identified above is invariably followed by litigation to determine the scope or limitations of the new principles, and that is what we face here. Nothing we have done to date compels or requires that we now make these new principles applicable to cases stemming from injuries under the Workmen's Compensation Act. It is not enough to determine whether the legal theories can be extended to cover the cases before us. The question is whether they should be. I believe that they should not. In this as in most situations, abstract theorization must yield to practicality at some point.

An examination of the volume of cases now covered by the Workmen's Compensation Act may serve to give some idea of what may follow in the wake of today's decision. The following figures from the 1979 Annual Report of the Division of Industrial Accidents are relevant on this subject.

|  | 1976 | 1977 | 1978 | 1979 |
|---|---|---|---|---|
| First Reports of Injury. (Employees of State, self-insurers and all others.) | 218,237 | 235,128 | 242,469 | 249,404 |
| Cases Completed | 11,594 | 11,797 | 11,382 | 14,217 |
| Lump Sum Settlements Approved | 5,896 | 6,829 | 6,880 | 6,880 |
| Lump Sum Awards | $49,009,867 | $59,308,925 | $60,821,665 | $73,515,218 |

These statistics do not, of course, give the number of cases in which relatives of the injured employees might make claims against the employers for loss of consortium, interference with familial relationship, or mental distress, but they are sufficient to permit an inference that the number will be considerable. Will the opinion of the court in the present case put our courts on the road back to the situation of congestion which the Legislature sought to remedy in 1911? Will it place a new and heavy burden on the employers for the cost of defending against such claims and the cost of meeting whatever judgments or settlements may result from them? Will it be one more factor to contribute to the decline of industry in this Commonwealth?

Concern over the inadequacy of the compensation provided for the injured employee and his or her family under the Workmen's Compensation Act is understandable, and reasonable efforts by the courts to improve the benefits to the level of the employee's actual wages, as a minimum, plus periodic adjustment of benefits to compensate for the ravages of inflation, would be commendable if such a decision were within the competence of the judiciary. See The Report of the National Commission on State Workmen's Compensation Laws, c. 7, at 117-119 (1972), on subject "A Time for Reform." However, under our system of a government of laws, such a decision is one of public policy entrusted primarily to the Legislature. Based on all of the considerations discussed above, it is my opinion that the question whether the long established and supposedly exclusive legislative plan for determination of the rights and liabilities arising out of injuries to employees should provide additional or different types of benefits for relatives of the injured employees is one which should be considered and addressed by the Legislature; and that the judiciary should not intrude itself into the making of that policy decision. *Longever* v. *Revere Copper & Brass Inc., ante* 221, 226 (1980).

If the Legislature determines, as a matter of policy, that it should bring about an increase in the benefits payable by

insurers to injured employees, it will have an opportunity to decide not only the amount of such increase, but also the form which it should take, i.e., whether it should be in the form of an increase in payments to the injured employee, an increase in payments to the dependent relatives or other relatives of the employee, or a combination of increased payments to the employee and to his relatives. Much more important, however, is the fact that in doing so the Legislature will have the opportunity to decide whether the administration of any increased payments or benefits should be delegated and entrusted to the Industrial Accident Board (G. L. c. 23, §§ 15-24), the quasi judicial board which is now responsible for the administration of the Workmen's Compensation Act (G. L. c. 152), rather than to have any part of the increased benefits, particularly those payable to persons other than the injured employees, be subject to adjudication by the judiciary. In view of the well-documented court congestion and other evils incident to litigation between injured employees and their employers which the Legislature sought to correct by its enactment of the Workmen's Compensation Act in 1911, it would seem that if the Legislature were now given an opportunity to consider the matter, it probably would not elect to aggravate further our already congested court dockets by a return to the pre-1911 practices which produced an unmanageable glut of litigation with oppressive costs to all concerned. (See note 2, *supra*.)


HENNESSEY, C.J. (dissenting). I agree with the opinion of the court in its conclusion and reasoning that a minor child should have a right to recover for loss of a parent's society and companionship caused by a defendant's culpable conduct. However, I do not agree that the child should recover in a case where the parent's injury was compensable under the Workmen's Compensation Act, and the statutes accordingly limited the legal liability of the defendant. On this point, I agree with the reasoning of both Justices Quirico and Wilkins in their separate opinions in this case.

I do not agree with the court's conclusion that there can be recovery for mental suffering and physical impairment by a wife and children who were not at the scene of the accident when it occurred or who did not arrive *at the scene of the accident* soon thereafter. First of all, in my view *Dziokonski* is not broad enough to cover this case. On the contrary, the opinion of the court here constitutes a large extension of *Dziokonski*. That case allows recovery to one who is at the scene when the accident occurs or arrives there soon after the accident. It could be argued that the last paragraph of that opinion contains some rather general language. However, as I read that last paragraph it kept the father's case alive solely because the allegations were so general as not to preclude him under the principles stated.

*Dziokonski* is admittedly a somewhat arbitrary cutoff of the limits of culpability. So was the *Spade* rule. So is the Restatement rule. So, indeed, is the rule of *Ferriter*, as stated in the court's opinion. All these are rules of policy designed to limit the great potential reach of the principle of reasonable foreseeability.

*Dziokonski*, on very compelling facts (mother died in the ambulance while accompanying injured child to hospital), was a modest policy extension of the Restatement policy rule. Not many cases will involve third parties on the scene. The opinion of the court in the instant case has the potential for extending liability of a defendant, in a ripple effect, to extraordinary lengths. This court in recent years has done much to revise many common law principles which needed change. We should think seriously whether there are any good reasons for extending the defendant's risk as far as the court's opinion, and its implications, do in this case.

I take some comfort that the majority of the Justices may have recognized some of my concerns by the emphasis in the court's opinion that the plaintiffs must show that they suffered physical impairment caused by the mental suffering, and that the plaintiffs must suffer their mental shock "immediately after the accident" or "closely on the heels of the accident."

WILKINS, J. (dissenting). I accept the logic of the opinion of the court that a minor child generally should have a right to recover for loss of a parent's society and companionship resulting from a defendant's negligence or intentional wrongdoing. I do this even though we become the first court of last resort in any State to do so.

As a matter of policy, however, I would decline to recognize a spouse's right to recover for loss of consortium and a child's right to recover for the loss of a parent's companionship and society where the injury sustained by the parent-spouse was covered by the Workmen's Compensation Act. In *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153 (1973), we recognized a spouse's right to recover for loss of consortium and society. In doing so, we noted the preferable circumstance, and the defendant's right to insist, that the spouse's consortium claim be tried with the underlying claim of the injured spouse in order to avoid redundant recovery. *Id.* at 162. We declared that spouses' claims for loss of consortium would not be enforceable where the claim for physical injuries had been concluded by judgment, settlement, or otherwise. *Id.* at 167.

In the context of a workmen's compensation injury, there is no litigable tort claim of the injured employee against the employer. Therefore, claims for loss of consortium or of companionship and society cannot be associated at trial with any underlying claim of the injured parent-spouse against the employer. The risk of the jury awarding damages for losses not properly within the scope of the injury to the spouse or child is obvious and substantial. I would not recognize a common law right of a spouse or a child to recover for the loss of consortium or of the companionship and society of a parent-spouse injured in circumstances where the employer's common law liability to the parent-spouse is barred by the Workmen's Compensation Act.

For the reasons already stated concerning the inappropriateness of permitting recovery for loss of consortium and companionship where the parent-spouse's injury was covered under the Workmen's Compensation Act, I would

not extend the principles of *Dziokonski* v. *Babineau,* 375 Mass. 555 (1978), to this case and thus would deny recovery for substantial physical injuries arising from emotional distress caused by the plaintiffs' seeing the injured parent-spouse.

I suspect that the court's recognition of these rights arising from a workmen's compensation injury will come as a substantial surprise to employers, insurers, the Bar, and the Legislature. I agree with the view expressed in the dissent of Mr. Justice Quirico that, if there is to be a right to recovery for injuries of the type alleged by the plaintiffs, the Legislature (and not the courts) should establish that right.